UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------x
                                        :

JOHNSON ELECTRIC INDUSTRIAL    :
MANUFACTORY, LTD. and JOHNSON   :
ELECTRIC NORTH AMERICA, INC.,    :
                                        :
        Plaintiffs,        :      CASE NO. 03 CV0098 AVC
                                        :
      -against-        :
                                        :
AMETEK, INC.,                          :
                                        :
        Defendant.        :
                                        :
---------------------------------------------------------x


## PLAINTIFFS' OPENING CLAIM CONSTRUCTION BRIEF

Moses & Singer LLP
1301 Avenue of the Americas
New York, NY 10019

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

I.   PRELIMINARY STATEMENT ........................................................................ 1

II.  OVERVIEW OF THE PATENTS FOR CLAIM CONSTRUCTION
     CONTEXT ........................................................................................................ 3

III. CANONS OF CLAIM CONSTRUCTION ........................................................ 3

IV.  CLAIM CONSTRUCTION ............................................................................... 5

     A.   Disputed Terms in U.S. Patent No. 6,309,180 ........................................ 5

          1.   Claim 1:   Separated apart and disconnected from each
               other ................................................................................................. 5

          2.   Claim 5:   Wherein the height of each said curvilinear wall
               is significantly reduced prior to reaching said shaft
               aperture, thereby forming a flow chamber contiguous with
               said air chambers ............................................................................. 7

     B.   Disputed Terms in U.S. Patent No. 6,439,843 ........................................ 7

          1.   Claim 1:  Closely disposed about said outer periphery
               exhaust region ................................................................................. 7

          2.   Claim 11:  Gathering chamber ....................................................... 9

          3.   Claim 17:  Defining a gathering chamber ................................... 11

V.   CONCLUSION ................................................................................................ 12

## TABLE OF AUTHORITIES

### CASES

Abbott Labs. v. Novopharm Ltd.,
   323 F.3d 1324 (Fed. Cir. 2003) .................................................................................. 6

Astrazeneca AB, Aktiebolaget Hassle, KBI-E, Inc. v. Mutual Pharm. Co., Inc.,
   384 F.3d 1333 (Fed. Cir. 2004) .............................................................................4, 10

C.R. Bard, Inc. v. U.S. Surgical Corp.,
   388 F.3d 858 (Fed. Cir. 2004) .................................................................................... 4

Day Int'l, Inc. v. Reeves Brothers, Inc.,
   260 F.3d 1343 (Fed. Cir. 2001) ................................................................ 4, 5, 7, 8, 10

Desper Products, Inc. v. QSound Labs., Inc.,
   157 F.3d 1325 (Fed. Cir. 1998) .................................................................................. 5

Hockerson-Halberstadt, Inc. v. Avia Group Int'l., Inc.,
   222 F.3d 951 (Fed. Cir. 2000) ........................................................... 4, 5, 7, 8, 10, 11

Lemelson v. General Mills, Inc.,
   968 F.2d 1202 (Fed. Cir. 1992) .................................................................................. 4

Markman v. Westview Instr.,
   52 F.3d 967 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996) .......................................... 3

Neomagic Corp. v. Trident Microsystems, Inc.,
   287 F.3d 1062 (Fed. Cir. 2002) ................................................................................ 11

Spectrum Int'l., Inc. v. Sterilite Corp.,
   164 F.3d 1372 (Fed. Cir. 1998) .................................................................... 5, 7, 8, 10

Std. Oil Co. v. Am. Cyanamid Co.,
   774 F.2d 448 (Fed. Cir. 1985) .................................................................................... 4

Vitronics Corp. v. Conceptronic, Inc.,
   90 F.3d 1576 (Fed. Cir. 1996) .................................................................................... 4

### STATUTES

35 U.S.C. § 102 ...............................................................................................................6, 8, 9

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------x
:
JOHNSON ELECTRIC INDUSTRIAL :
MANUFACTORY, LTD. and JOHNSON :
ELECTRIC NORTH AMERICA, INC., :
:
           Plaintiffs, :    CASE NO. 03 CV0098 AVC
:
       -against- :
:
AMETEK, INC., :
:
          Defendant. :
:
---------------------------------------------------------x

PLAINTIFFS' OPENING CLAIM CONSTRUCTION BRIEF

Plaintiffs Johnson Electric Industrial Manufactory, Ltd. and Johnson Electric North America, Inc. (collectively "Johnson"), by and through their undersigned counsel, respectfully submit this Opening Claim Construction Brief.

I.    PRELIMINARY STATEMENT

In this patent infringement action, Johnson seeks, inter alia, declaratory judgments of non-infringement and of invalidity of Ametek, Inc.'s ("Ametek") U.S. Patent Nos. 5,734,214; 6,309,180 (the "'180 patent"); 6,166,462; 6,439,843 (the "'843 patent"); and 6,695,580. As set forth in the parties' Joint Claim Construction Statement filed on February 16, 2005,[1] the constructions of four claim terms are disputed: one in the '180 patent, and three in the '843 patent.[2]

---

[1] A copy of the Joint Claim Construction Statement is attached to the Declaration of Michael J. Pospis in Support of Plaintiffs' Opening Claim Construction Brief ("Pospis Decl.") as Exhibit A.

448735  007171.010

It is well settled that claim language can take on its plain meaning, as long as that meaning is not inconsistent with the intrinsic evidence of the claims, specification, and prosecution history.  However, where that meaning is expressly contradicted by statements made by the patent applicants or their counsel during the prosecution of the patent application, and particularly where applicants or their counsel have acted as their own lexicographers or have disavowed claim scope to obtain the claims, then the plain meaning no longer governs.  Such is the case at bar.

Johnson's proposed constructions utilize the exact statements made by applicants[3] and their counsel[4] during the prosecution of the '180 and '843 Patents.  Those statements constitute explicit lexicography and disavowals of claim scope, made for the express purpose of overcoming rejections from the Patent Office, distinguishing cited references, and obtaining patentable claims.  Where Johnson's proposed constructions properly incorporate applicants' and their counsel's binding statements, Ametek ignores them and proposes plain meaning definitions that contradict the prosecution history.  Ametek's post-litigation attempt to reclaim abandoned subject matter to capture Johnson's products flies in the face of Federal Circuit precedent.  Therefore, Johnson's proposed constructions should be adopted, and Ametek's rejected.

---

[2]  As referenced in Section IV(A)(2) infra, the parties have agreed to the construction of one additional claim term since the submission of the Joint Claim Construction Statement.

[3]  Applicants are all Ametek employees.

[4]  Ametek's patent prosecution counsel is also its litigation counsel in this action.

II.  OVERVIEW OF THE PATENTS FOR CLAIM CONSTRUCTION CONTEXT

The patents-in-suit consist of structural claims for motor assemblies commonly used in vacuum cleaners. Each of the disputed claim phrases deals with the characteristics of a single part of each motor assembly, responsible for redirecting the flow of air through the assembly. That part is called a "diffuser plate" in the '180 patent, and an "end bracket" in the '843 patent (the '843 "end bracket" includes diffuser plate functions and characteristics).[5]

Diffuser plates guide the flow of air through a motor, commonly through the use and placement of vanes ("blades"[6]) or walls upon the plate. These vanes ("blades") or walls form various passages and chambers directing the flow of air.

The characteristics and structural configuration of the vanes ("blades") or walls, and the passages and chambers they form, on the '180 "diffuser plate" and the '843 "end bracket" are the subject of the instant claim construction proceeding.

III.  CANONS OF CLAIM CONSTRUCTION

Claim construction entails the analysis of three sources: the claims, the specification, and the prosecution history. Markman v. Westview Instr., 52 F.3d 967, 979 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996). A court is obligated to examine the intrinsic evidence to ascertain whether the patentee has set forth an explicit definition of a term contrary to its ordinary meaning, has disclaimed subject matter, or has otherwise limited

---

[5] Copies of the '180 and '843 patents are attached to the Pospis Decl. as Exhibits B and C, respectively.

[6] As agreed by the parties in the Joint Claim Construction Statement, passim (Pospis Exhibit A).

the scope of the claims. Day Int'l., Inc. v. Reeves Bros., Inc., 260 F.3d 1343, 1348 (Fed. Cir. 2001); Hockerson-Halberstadt, Inc. v. Avia Group Int'l., Inc., 222 F.3d 951, 955 (Fed. Cir. 2000). Thus, "the ordinary and customary meaning of a term does not govern if the intrinsic record contains clear lexicography or disavowal of claim scope." C.R. Bard, Inc. v. U.S. Surgical Corp., 388 F.3d 858, 863 (Fed. Cir. 2004). That is, where the intrinsic evidence clearly binds the patentee to a narrow definition due to either lexicography, clear disavowal, or both, the claims are not accorded their ordinary, broad meaning. Astrazeneca AB, Aktiebolaget Hassle, KBI-E, Inc. v. Mutual Pharmaceutical Co., Inc., 384 F.3d 1333, 1338-40 (Fed. Cir. 2004).

The prosecution history is particularly relevant to claim construction because it "gives insight into what the applicant originally claimed as the invention, and often what the applicant gave up in order to meet the Examiner's objections." Lemelson v. General Mills, Inc., 968 F.2d 1202, 1206 (Fed. Cir. 1992). Furthermore, the prosecution history is "especially important when the invention involves a crowded art field, or when there is particular prior art that the applicant is trying to distinguish." Id. See also, Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996) (the prosecution history "is often of critical significance in determining the meaning of the claims"). The relevance of the prosecution history as a source of claim construction is further underscored by its status as a "public record … upon which reasonable competitors form[] their business strategies." Hockerson-Halberstadt, 222 F.3d at 957.

It is well-settled that the prosecution history "limits the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance." Std. Oil Co. v. Am. Cyanamid Co., 774

F.2d 448, 452 (Fed. Cir. 1985).  See also, Spectrum Int'l., Inc. v. Sterilite Corp., 164 F.3d 1372, 1379 (Fed. Cir. 1998) ("[c]laims may not be construed one way in order to obtain their allowance and in a different way against accused infringers"); Desper Products, Inc. v. QSound Labs, Inc., 157 F.3d 1325, 1340 (Fed. Cir. 1998) ("[p]ost-hoc, litigation-inspired argument cannot be used to reclaim subject matter that the public record in the PTO clearly shows has been abandoned").  Hence, disclaimer of particular features arises where a patent applicant distinguishes prior art on the basis of said features.  See, e.g., Day Int'l., 260 F.3d at 1349 (distinguishing the claimed invention from two prior art references resulted in disavowal of the processes disclosed in those references); Hockerson-Halberstadt, 222 F.3d at 956 (applicant's statement that the claimed invention had a "much narrower groove" than the prior art operated as a "clear disavowal of … a groove width greater than that disclosed in the prior art"); Spectrum Int'l., 164 F.3d at 1379 (prosecution argument that invention was distinct from a prior art reference resulted in disavowal of the prior art structure).

IV.   CLAIM CONSTRUCTION

    A.   Disputed Terms in U.S. Patent No. 6,309,180

        1.   Claim 1:  Separated apart and disconnected from each other

Johnson's proposed construction of the claim phrase that the curvilinear walls of the diffuser plate are "separated apart and disconnected from each other" is:

> [the curvilinear walls are] not joined to one another by virtue of a corner or other structural feature that extends from the second side of the main body portion.

This construction is the exact one given by Applicants and their counsel during the prosecution of the '180 Patent.  During prosecution, the Examiner rejected application

claim 6 (issued claim 1) under 35 U.S.C. § 102(b) as anticipated by U.S. Patent No. 5,296,769 (the "Havens patent"). (Office Action dated March 6, 2001, at p. 2.)[7] Applicants and their counsel responded by distinguishing the Havens patent, and amending application claim 6 (issued claim 1). In particular, Applicants and their counsel stated that:

> Upon consideration of the [Havens] reference and the Examiner's comments, the Applicants respectfully request entry of an amendment to claim 6 [issued claim 1] which sets forth that the curvilinear walls are <u>separated apart and disconnected from each other. In other words,</u> the curvilinear walls are <u>not joined to one another by virtue of a corner or other structural feature that extends from the second side of the main body portion</u>. This feature is clearly not taught or suggested by the Havens reference nor does any of the prior art made of record provide such a feature with all the other claim elements.

(Applicants' Response dated June 11, 2001, at pp. 3-4 (emphasis added).)[8]

By using the phrase "[i]n other words", Applicants have provided an explicit definition of the term "separated apart and disconnected from each other." E.g., Abbott Labs. v. Novopharm Ltd., 323 F.3d 1324, 1330 (Fed. Cir. 2003) ("[W]hen the patentee 'has chosen to be his or her own lexicographer by clearly setting forth an explicit definition for a claim term[,]'" that definition governs.) (citations omitted). In Abbott Labs., the use of "i.e." after a claim term established that the language following the "i.e" was an explicit definition of the claim term at issue. Id.

Moreover, by amending the claim and expressly distinguishing it from the Havens patent, Applicants and their counsel have disavowed claim scope, and are bound to their

---

[7] Copies of the March 6, 2001 Office Action and the Havens Patent are attached to the Pospis Decl. as Exhibits D and E, respectively.

[8] A copy of Applicants' June 11, 2001 Response is attached to the Pospis Decl. as Exhibit F.

limiting statement made in the prosecution history.  Day Int'l., 260 F.3d at 1349; Hockerson-Halberstadt, 222 F.3d at 956; Spectrum Int'l., 164 F.3d at 1379.

These distinguishing features are easily seen by a comparison of Ametek's '180 patent at Figure 6 (Pospis Decl. Exh. B), with the Havens patent at Figure 5B (Pospis Decl. Exh. E).

Ametek and its counsel ignore their own explicit statements in the prosecution history, and cannot provide any proper basis to avoid their delimiting impact.  Thus, Johnson's proposed construction should be adopted.

>   2.   Claim 5:   Wherein the height of each said curvilinear wall is significantly reduced prior to reaching said shaft aperture, thereby forming a flow chamber contiguous with said air chambers

The parties now agree that the construction of the claim phrase "wherein the height of each said curvilinear wall is significantly reduced prior to reaching said shaft aperture, thereby forming a flow chamber contiguous with said air chambers" is:

> the distance from the base to the top of each curvilinear wall is diminished by a fairly large amount before arriving at said shaft aperture, thereby developing an enclosed space accommodating movement sharing an edge or boundary with said air chambers.

>   B.   Disputed Terms in U.S. Patent No. 6,439,843
>     1.   Claim 1:   Closely disposed about said outer periphery exhaust region

Johnson's proposed construction of the claim phrase that the vanes of the end bracket are "closely disposed about said outer periphery exhaust region" of the fan is:

> near and on the same plane as the outer boundary of the fan.

Applicant and his counsel's statements during the prosecution of the '843 Patent establish that Johnson's proposed construction is correct. During the prosecution of the '843 Patent, the Examiner rejected claim 1 under 35 U.S.C. § 102(e) as anticipated by U.S. Patent No. 6,166,462 (the "'462 patent"). (Office Action dated November 9, 2001, at p. 3.)[9] Applicant, through his counsel, responded by distinguishing the '462 patent, and amending claim 1. In particular, Applicant and his counsel stated:

> A close review of the '462 patent clearly shows that the 'vanes' of that particular diffuser are disposed in a plane below the bottom ring of the working air fan and nowhere near the outer periphery of the fan. <u>In distinct contrast</u>, the present invention now sets forth that the vanes of the end bracket are closely disposed about the outer periphery exhaust region of the working air fan. This feature is clearly not taught or suggested by the '462 patent.

(Applicant's Response dated March 12, 2002, at p. 8 (emphasis added).)[10]

By stating that the claimed invention is "[i]n distinct contrast" to the '462 patent, and that the new feature "is clearly not taught or suggested by the '462 patent", Applicant has disclaimed the distinguished structure of the '462 patent. Day Int'l., 260 F.3d at 1349 (disavowal of a prior art process where the patentee distinguished the process by saying it was "completely opposite of" the claimed invention). Accord, Hockerson-Halberstadt, 222 F.3d at 956; Spectrum Int'l., 164 F.3d at 1379.

A depiction of this feature can be seen in the '843 patent at Figure 4 (Pospis Decl. Exh. C).

---

[9] Copies of the November 9, 2001 Office Action and the '462 Patent are attached to the Pospis Decl. as Exhibits G and H, respectively.

[10] A copy of Applicant's March 12, 2002 Response is attached to the Pospis Decl. as Exhibit I.

Ametek and its counsel ignore their statements in the prosecution history, and cannot provide any proper basis to avoid their delimiting impact. Thus, Johnson's proposed construction should be adopted.

### 2. Claim 11: Gathering chamber

Johnson's proposed definition for the term "gathering chamber" is

> the space or cavity formed between the trailing ends of the vanes and the shroud wherein the trailing ends of the vanes are not positioned directly against the surface of the shroud.

The ordinary meaning of "chamber" is "a space or cavity."[11] Applicant's statements during the prosecution of the '843 Patent further limit the claim, mandating that the gathering chamber is "formed between the trailing ends of the vanes and the shroud," and that "the trailing ends of the vanes are not directly positioned directly against the surface of the shroud."

During the prosecution of the '843 Patent, the Examiner rejected application claim 18 (issued claim 17) under 35 U.S.C. § 102(b) as anticipated by Japanese Patent No. 6-123297 (the "Japanese '297 patent").[12] (Office Action dated November 9, 2001 (Pospis Decl. Exh. G), at p. 3.) Applicant responded by distinguishing the Japanese '297 patent, and amending application claim 18 (issued claim 17). In particular, Applicant and his counsel stated:

> Applicant respectfully requests entry of an amendment … which sets forth that the outer rim of the bracket in conjunction with the shroud <u>forms a</u>

---

[11] Merriam-Webster Online Dictionary (www.merriam.com) (2005) (Pospis Decl. Exh. J). Accord, Joint Claim Construction Statement, Pospis Decl. Exh. A, at p. 6 (stating that the parties agree that a "fan chamber" is "a cavity for the fan").

[12] A copy of the Japanese '297 patent is attached to the Pospis Decl. as Exhibit K.

> <u>gathering chamber between the ends of the vanes and the shroud</u>.
> Such a feature is clearly not present in the [Japanese '297 Patent]
> inasmuch as the trailing ends of the vanes are positioned directly
> against the surface of the shroud and therefore a gathering chamber
> <u>as defined in the present claim</u> is simply not present.

(Applicant's Response dated March 12, 2002 (Pospis Decl. Exh. I), at p. 9 (emphasis added).)

First, by employing the phrase "as defined in the present claim," Applicant has acted as his own lexicographer and provided an explicit definition for the term "gathering chamber." See Astrazeneca, 384 F.3d at 1340 (finding that the use of the phrase "as defined below" amounted to lexicography, justifying a deviation from ordinary meaning)).

Second, by amending the claim to state that the gathering chamber is formed specifically between the ends of the vanes and the shroud (Applicant's Response dated March 12, 2002 (Pospis Decl. Exh. I), at p. 16), and by distinguishing the Japanese '297 patent with respect to the configuration of the vanes and the shroud, Applicant has disclaimed the distinguished structure. Day Int'l., 260 F.3d at 1349; Hockerson-Halberstadt, 222 F.3d at 956; Spectrum Int'l., 164 F.3d at 1379.[13]

Ametek's proposed definition of "gathering chamber" ("an enclosed space for accumulation of working air") ignores its and its counsel's delimiting statements in the prosecution history, and therefore "reduces to a request for a mulligan that would erase

---

[13] This is also consistent with the '843 patent specification. ('843 Patent, Pospis Decl. Exh. C, at col. 4, lns. 14-20 ("Between the trailing ends 58 and the outer rim 36, a gathering chamber 68 is formed when the shroud 20 [sic, 28] is secured to the end bracket 24. It will be appreciated that a periphery formed by the trailing ends 58 is positioned at about a mid-point between the outer diameter of the working air fan 26 and the inner diameter of the shroud 28 when affixed to the bracket 24.") (emphasis added).)

from the prosecution history the inventor's disavowal of a particular aspect of a claim term's meaning." Hockerson-Halberstadt, 222 F.3d at 957. Moreover, Ametek's overly broad definition is an improper attempt to construe the claims with respect to Johnson's motors, and is therefore impermissible. Neomagic Corp. v. Trident Microsystems, Inc., 287 F.3d 1062, 1074 (Fed. Cir. 2002). Thus, Johnson's proposed construction should be adopted.

### 3. Claim 17: Defining a gathering chamber

Johnson's proposed construction of the claim phrase "defining a gathering chamber" is

> marking out the boundaries or limits of the space or cavity formed between the trailing ends of the vanes and the shroud wherein the trailing ends of the vanes are not positioned directly against the surface of the shroud.

Johnson's proposed construction simply joins the ordinary meaning of "defining" ("marking out the boundaries or limits of"),[14] with its proposed definition for "gathering chamber" (supra, at pp. 9-11).

---

[14] Merriam-Webster Online Dictionary (www.merriam.com) (2005) (Pospis Decl. Exh. J).

V.  **CONCLUSION**

In light of the foregoing, Johnson respectfully requests that the Court adopt its proposed definitions for the disputed claim terms.

Dated:  February 28, 2005
        New York, New York

                                        Respectfully submitted,

                                        _____
                                        Stephen Norman Weiss
                                        (CT Fed. Bar No. CT 12717)
                                        Gregory J. Fleesler
                                        (CT Fed. Bar No. CT 24491)
                                        MOSES & SINGER, LLP
                                        1301 Avenue of the Americas
                                        New York, New York 10019
                                        Tel.: (212) 554-7800
                                        Fax: (212) 554-7700

                                        Edmund J. Ferdinand, III
                                        (CT Fed. Bar. No. CT 21287)
                                        GRIMES & BATTERSBY, LLP
                                        488 Main Street 3rd floor
                                        Norwalk, CT 06851
                                        Tel.: (203) 849-8300
                                        Fax: (203) 849-9300

                                        *Attorneys for Plaintiffs/Counterclaim
                                        Defendants Johnson Electric Industrial
                                        Manufactory, Ltd. and Johnson Electric
                                        North America, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and complete copy of PLAINTIFFS' OPENING CLAIM CONSTRUCTION BRIEF and the DECLARATION OF MICHAEL J. POSPIS IN SUPPORT OF PLAINTIFFS' OPENING CLAIM CONSTRUCTION BRIEF (with supporting exhibits) were served on this 28th day of February 2005 via regular mail to the following individuals:

Ray L. Weber, Esq.
Renner Kenner Greive Bobak Taylor & Weber
First National Tower, Fourth Floor
Akron, Ohio 44308-1456

Ben A. Solnit, Esq.
Tyler, Cooper & Alcorn, LLP
205 Church Street
New Haven, Connecticut 06510

*Attorneys for Defendants and
Counterclaim Plaintiffs Ametek, Inc.*

/s/ Michael J. Pospis
Michael J. Pospis
MOSES & SINGER LLP
1301 Avenue of the Americas
New York, NY 10019