UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Johnson Electric Industrial Manufactory, Ltd. et al. | ) ) ) | |
| | ) | Civil Action No: 303CV0098AVC |
| Plaintiffs | ) | |
| v. | ) | |
| | ) | |
| Ametek, Inc. | ) | |
| | ) | |
| Defendant | ) | March 1, 2005 |

## DEFENDANT'S BRIEF ON CLAIM CONSTRUCTION

Ray L. Weber (CT 02148)
Renner, Kenner, Greive, Bobak,
Taylor & Weber
Fourth Floor, First National Tower
Akron, Ohio 44308
Telephone:  (330) 376-1242
Facsimile: (330) 376-9646
rlweber@rennerkenner.com

Ben A. Solnit (CT 00292)
Gerald T. Giaimo (ct14885)
Tyler, Cooper and Alcorn, LLP
205 Church Street
New Haven, CT 06510
Telephone:  (203) 784-8205
Facsimile:  (203) 777-1181
solnit@tylercooper.com
giaimo@tylercooper.com

Attorneys for Defendant
Ametek, Inc.
Gerald T. Giaimo-ct14885

## TABLE OF CONTENTS

TABLE OF CONTENTS .......................................................... i

TABLE OF AUTHORITIES ...................................................... iii

**DEFENDANT'S BRIEF ON CLAIM CONSTRUCTION** ................... 1

    **Claim Terms, Words and Phrases Addressed Herein** .......... 1

    **Claim Construction in General** ............................. 2

    **Rules of Claim Construction** ............................... 4

**PRELIMINARY STATEMENT REGARDING ALL CLAIM TERMS** ........ 7

**ANALYSIS OF CLAIMS OF THE '180 PATENT (EXHIBIT A)** ........... 7

**CLAIM 1** ............................................... 7

    **Claim Term** ............................................... 7.

    **Ametek's Definition and Support** .......................... 7

    **Challenge to Johnson's Definition** ......................... 8

**CLAIM 5** ............................................... 9

    **Claim Term** ............................................... 9

    **Agreement of Parties** ..................................... 9

**ANALYSIS OF CLAIMS OF THE '843 PATENT (EXHIBIT B)** ........... 9

**CLAIM 1** ............................................... 9

    **Claim Term** ............................................... 9

    **Ametek's Definition and Support** .......................... 9

    **Challenge to Johnson' Definition** ......................... 10

**CLAIM 11** ............................................... 11

    **Claim Term** ............................................... 11

    **Ametek's Definition and Support** .......................... 11

    **Challenge to Johnson's Definition** ......................... 12

**CLAIM 17** ............................................... 12

    **Claim Term** ............................................... 12

    **Ametek's Definition and Support** .......................... 12

    **Challenge to Johnson's Definition** ......................... 13

**CONCLUSION** ............................................... 13

**CERTIFICATE OF SERVICE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

## *CASES*

*ACCO Brands, Inc. v. Micro Sec. Devices, Inc.,*
346 F.3d 1075 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Amgen, Inc. v. Hoechst Marion Roussel, Inc.,*
314 F.3d 1313 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Anchor Wall Sys. Inc. v. Rockwood Retaining Walls, Inc.,*
340 F.3d 1298 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Astrazeneca AB, Aktiebolaget Hassle, KBI-E, Inc. v. Mutual Pharmaceutical Co, Inc.,*
384 F.3d 1333 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Autogiro Co. of Am. v. United States,*
384 F.2d 391 (Ct. Cl. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Brookhill-Wilk, 1 LLC v. Intuitive Surgical, Inc.,*
334 F. 3d 1294 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*E-Pass Technologies, Inc. v. 3Com Corp.,*
343 F.3d 1364 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Housey Pharm., Inc. v. Astrazeneca UK Ltd.,*
366 F.3d 1348 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Inverness Medical Switzerland GmbH v. Warner Lambert Co.,*
309 F.3d 1373 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Johnson & Johnston Associates, Inc. v. R. E. Service Co., Inc.,*
285 F.3d 1046 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*K2 Corp. v. Salomon S. A.,*
191 F.3d 1356 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Markman v. Westview Instruments, Inc.,*
52 F. 3d 967 (Fed. Cir. 1995)
*(in banc) Aff'd,* 116 S. Ct. 1384(1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*Neomagic Corp. v. Trident Microsystems, Inc.,*
287 F.3d 1062 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Oak Technology, Inc. v. ITC,*
248 F.3d 1316 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Pall Corp. v. Micro Separations, Inc.,*
66 F.3d 1211 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Perkin-Elmer v. Westinghouse Elec. Corp.,*
822 F. 2d 1528 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*PSC Computer Products, Inc. v. Foxconn Int'l, Inc.,*
355 F.3d 1353 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Resonate Inc. v. Aleton Websystems, Inc.,*
338 F.3d 1360 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3, 5*

*RF Delaware, Inc. v. Pacific Keystone Technologies, Inc.,*
326 F.3d 1255 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*SRI Int'l v. Matsushita Elec. Corp. of America,*
775 F.2d 1107 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Sunrace Roots Ent. Co. v. SRAM Corp.,*
336 F.3d 1298 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Superguide Corp. v. DirecTV Enterprises, Inc.,*
358 F.3d 870 (Fed. Cir. 2004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Teleflex, Inc. v. Ficosa North America Corp.,*
299 F.3d 1313 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Texas Digital Systems, Inc. v. Telegenix, Inc.,*
308 F.3d 1193 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Adams,*
383 U.S. 39 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Vanderlande Indus. Nederland BV v. ITC,*
366 F. 3d 1311 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

*Vitronics Corp. v. Conceptronic, Inc.,*
90 F.3d 1576 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,3,6

*W.E. Hall Co. v. Atlanta Corrugating, LLC,*
370 F.3d 1343 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Johnson Electric Industrial | ) | |
| Manufactory, Ltd. et al. | ) | |
| | ) | Civil Action No: 303CV0098AVC |
| Plaintiffs | ) | |
| v. | ) | |
| | ) | |
| Ametek, Inc. | ) | |
| | ) | |
| Defendant | ) | March 1, 2005 |

## DEFENDANT'S BRIEF ON CLAIM CONSTRUCTION

Now comes Defendant, Ametek, Inc. ("Ametek"), and presents the following as the appropriate construction of the terms, words, and phrases of the patent claims at issue herein.

## Claim Terms, Words and Phrases Addressed Herein

This case involves assertions of infringement, non-infringement and invalidity of certain claims of U.S. Patents 5,734,214, 6,309,180, 6,166,462, 6,439,843 and 6,695,580. The parties have previously filed their Joint Claim Construction Statement, identifying both the construction of claim terms upon which the parties agree, and those upon which they disagree. This brief addresses the five claim terms upon which the parties have disagreed, one each from claims 1 and 5 of U.S. Patent 6,309,180 (the "'180 patent" attached as Exhibit A), and one each from claims 1, 11 and 17 of U.S. Patent 6,439,843 (the "'843 patent" attached as Exhibit B).

## Claim Construction in General

In this case, Ametek alleges infringement of its patents-in-suit, while Plaintiffs (jointly

"Johnson")assert that the patents are neither infringed nor valid.  As to the patent

infringement/non-infringement issue, the analysis involves two steps: the proper

construction (determining the meaning and scope) of the asserted claims, followed by a

determination of whether the accused product infringes the asserted claims as properly

construed.  *Markman v. Westview Instruments, Inc.*, 52 F. 3d 967,976 (Fed. Cir. 1995) (*in*

*banc*) *Aff'd*, 116 S. Ct. 1384, 1393 (1996); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d

1576, 1582 (Fed. Cir. 1996).  The first step, claim construction, is a matter of law.

*Vitronics*, 90 F.3d at 1582, citing *Markman*, 52 F. 3d at 979.  The claims of a patent are to

be construed in light of the patent specification, and both are to be read with a view of

ascertaining the invention.  *United States v. Adams*, 383 U.S. 39, 49 (1966).  The goal is to

determine what a person of ordinary skill in the art would understand the claims to mean.

*Vanderlande Indus. Nederland BV v. ITC*, 366 F. 3d 1311, 1318 (Fed. Cir. 2004).    I    n

construing claims, a court should first address the intrinsic evidence of the patent itself,

including the claims, the patent specification, and prosecution history.  *Vitronics*, 90 F.3d

at 1582, citing *Markman*, 52 F.3d at 979.  The court should first look to the claims

themselves, both those asserted and those not asserted in the litigation, to determine the

scope of the patented invention.  It is then always necessary to review the patent

specification to determine if the inventor used any of the words, terms or phrases of the

patent claims inconsistently with their ordinary meaning.  See *Vitronics*, 90 F.3d at 1582.

-2-

The court may then look to the prosecution history of the patent, if the same is in evidence, with regard to representations made to the Patent Office regarding the claims. *Id.*

Resort may also be made to extrinsic evidence, such as the testimony of experts, if needed to assist in determining the meaning or scope of technical terms in the claims. *Vitronics*, 90 F. 3d at 1583, citing *Pall Corp v. Micron Separations, Inc.*, 66 F.3d 1211, 1216 (Fed. Cir. 1995); *Markman*, 52 F.3d at 980.

There is a heavy presumption that the ordinary and customary meaning of words and phrases of a claim are to apply. See *Sunrace Roots Ent. Co. v. SRAM Corp.*, 336 F.3d 1298, 1302 (Fed. Cir. 2003); *Housey Pharm., Inc. v. Astrazeneca UK Ltd.*, 366 F.3d 1348, 1352 (Fed. Cir. 2004); *W.E. Hall Co. v. Atlanta Corrugating, LLC*, 370 F.3d 1343, 1350 (Fed. Cir. 2004); *Resonate Inc. v. Aleton Websystems, Inc.*, 338 F.3d 1360, 1364 (Fed. Cir. 2003); *E-Pass Technologies, Inc. v. 3Com Corp.*, 343 F.3d 1364, 1368 (Fed. Cir. 2003). The presumption is overcome if the patentee, acting as his or her own lexicographer, has clearly set forth an explicit definition of the term  different from its ordinary meaning, or if the inventor has disavowed or disclaimed scope of coverage by using words or expressions of manifest exclusion or restriction representing a clear disavowal of claim scope. See *Astrazeneca AB, Akiebolaget Hassle, KBI-E, Inc. v. Mutual Pharmaceutical Co, Inc.*, 384 F.3d 1333, 1337 (Fed. Cir. 2004); citing *Tex. Digital Sys. Inc. v. Telegenix, Inc.,* 308 F.3d 1193, 1204 (Fed. Cir. 2002); *Sunrace Roots*, 336 F.3d at 1304; *Housey Pharm.*, 366 F.3d at 1352; *W.E. Hall*, 370 F.3d at 1353.  It is elementary that dictionary definitions may provide both insight into the ordinary meaning of a claim term and evidence of that meaning. *Housey*

-3-

*Pharm.*, 366 F.3d at 1352; *W.E. Hall*, 370 F.3d at 1350; *Inverness Medical Switzerland GmbH v. Warner Lambert Co.*, 309 F.3d 1373, 1378 (Fed. Cir. 2002).    But, a dictionary definition inconsistent with the specification is to be rejected. *Texas Digital*, 308 F.3d at 1204. Indeed, the general meanings gleaned from reference sources such as dictionaries or the like must be compared against the use of the words, terms or phrases in context, and the intrinsic record of the patent must be consulted to determine what definition, if any, offered by the dictionary or resource is most consistent with the use of words by the inventor. *Brookhill-Wilk, 1 LLC v. Intuitive Surgical, Inc.*, 334 F. 3d 1294, 1300 (Fed. Cir. 2003). The patent specification should be used to assist in resolving ambiguity when the ordinary and customary meaning of words in the claims would lack sufficient clarity to permit the scope of the claim to be determined, or where there is an inherent intent to deviate from the ordinary and customary meaning of a claim word or term. *Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). "[A] general-usage dictionary cannot overcome credible art-specific evidence of the meaning or lack of meaning of a claim term." *Vanderlande Indus.*, 366 F.3d at 1321. Extrinsic evidence has an appropriate part in claim construction where it "can shed useful light on the relevant art - - and thus better allow a court to place itself in the shoes of a person of ordinary skill in the art" when considering the claims in light of the specification. *Vanderlande Indus.*, 366 F.3d at 1318.

## Rules of Claim Construction

While claim construction is undertaken with resort first to the intrinsic record and then to extrinsic evidence in order to ascertain the true meaning and scope of the claim as

-4-

would be understood by one skilled in the art, the exercise is fraught with rules and caveats that must be considered along the way. The following treats those relevant here.

While recourse must always be made to the patent specification in order to gain an appreciation of the claims, a cardinal rule of claim construction is "Specifications teach. Claims claim." *SRI Int'l v. Matsushita Elec. Corp. of America*, 775 F.2d 1107, 1121 n.14 (Fed. Cir. 1985). "Consistent with its scope definition and notice functions, the claim requirement presupposes that a patent applicant defines his invention in the claims, not in the specification. After all, the claims, not the specification, provide the measure of the patentee's right to exclude." See *PSC Computer Products, Inc. v. Foxconn Int'l, Inc.*, 355 F.3d 1353, 1359 (Fed. Cir. 2004), citing *Johnson & Johnston Associates, Inc. v. R. E. Service Co., Inc.*, 285 F.3d 1046, 1052 (Fed. Cir. 2002). In other words, while reference may be made to the specification in order to determine the meaning of claim language, and while "understanding the claim language may be aided by the explanations contained in the written description, it is important not to import into a claim limitations that are not a part of the claim." *Superguide Corp. v. DirecTV Enterprises, Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004; see also *Resonate Inc.*, 338 F.3d at 1364; *Anchor Wall Sys. Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1306 (Fed. Cir. 2003). Cardinally, "[c]ourts can neither broaden nor narrow claims to give the patentee something different than what he has set forth." *Oak Technology, Inc. v. ITC*, 248 F.3d 1316, 1329 (Fed. Cir. 2001), citing *Autogiro Co. of Am. v. United States*, 384 F.2d 391, 396 (Ct. Cl. 1967).

Similarly, while it is improper to import limitations from the patent specification into the claims, it is equally improper to read a limitation from one claim into another, whether for purposes of determining validity or infringement. *SRI Int'l*, 775 F.2d at 1122. There is a presumption that different claims are of different scopes. See *RF Delaware, Inc. v. Pacific Keystone Technologies, Inc.*, 326 F.3d 1255, 1263 (Fed. Cir. 2003); see also *Amgen, Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1326 (Fed. Cir. 2003).

It is also fundamental that claim construction must be undertaken without reference to the accused products, such that the construction of the claims is not guided by what may cover or exclude the accused products. See *Neomagic Corp. v. Trident Microsystems, Inc.*, 287 F.3d 1062, 1074 (Fed. Cir. 2002), citing *SRI Int'l.*, 775 F.2d at 1118.

A patent claim directed to a structure may also include functional language that serves as an additional limitation in the claim. In other words, where structure is defined in a particular relationship to achieve a particular function or operation, the functional relationship or operation of the structural components are considered an additional claim limitation requiring construction. See *K2 Corp. v. Salomon S. A.*, 191 F.3d 1356, 1363 (Fed. Cir. 1999 and *ACCO Brands, Inc. v. Micro Sec. Devices, Inc.*, 346 F.3d 1075, 1078 (Fed. Cir. 2003).

Throughout, it must be remembered that claim construction begins with the language of the claims, themselves. *Vitronics*, 90 F.3d at 1582. Specific claim limitations may not be ignored as insignificant or immaterial. *Perkin-Elmer v. Westinghouse Elec. Corp.*, 822 F. 2d 1528, 1533, fn. 8 (Fed. Cir. 1987).

-6-

## PRELIMINARY STATEMENT REGARDING ALL CLAIM TERMS

It is Ametek's contention that each of the claim terms in issue should be construed consistent with its ordinary and customary meaning. In this regard, Ametek has accessed dictionary definitions of the words, terms and phrases in issue, and demonstrates herein that those dictionary definitions are consistent with the specification and drawings of the patents in issue. Neither these patents nor their prosecution histories demonstrate any intent by the inventors to adopt a definition for the words, terms and phrases that would be other than the ordinary and customary meaning.

## ANALYSIS OF CLAIMS OF THE '180 PATENT (EXHIBIT A)

### CLAIM 1

### Claim Term:

separated apart and disconnected from each other

### Ametek's Definition and Support:

The claim limitation "separated apart and disconnected from each other" means "set at a distance in place or position and individually divided." This definition is obtain from dictionary definitions and is consistent with the specification and drawings of the '180 patent. It should be adopted because there is no indication whatsoever that the patentees have set forth an explicit definition different from this ordinary meaning, nor that they have disavowed or disclaimed such a meaning.

As set forth in the definitions of Exhibit C, the word "separated" means "set or kept apart." The word "apart" means "at a distance in place, position." The word "disconnected" means "having been divided," and the word "each" means "every one of a group considered

-7-

individually; each one." Accordingly, the phrase "separated apart and disconnected from each other" simply means "set at a distance in place or position and individually divided."

The claim term in issue relates to the position and relationship of curvilinear walls. Ametek's definition is consistent with the specification and drawings of the '180 patent regarding the curvilinear walls, which are identified at Col. 4, lines 54-55, as being the curvilinearly extending walls 77 shown in Fig. 6. That drawing shows the curvilinear walls as being "set at a distance in place or position and individually divided."

**Challenge to Johnson's Definition:**

Johnson proposes that the term "separated apart and disconnected from each other" should mean "not joined to one another by virtue of a corner or other structural feature that extends from the second side of the main body portion." This proposed definition violates numerous rules of claim construction, while ignoring the term itself. The claim term contains no word or phrase that would be construed to be a "corner or other structural feature that extends from the second side of the main body portion." The only portion of Johnson's proposed definition that even begins to relate to the claim term in issue is "not joined to one another." Johnson's gratuitous addition of "by virtue of a corner or other structural feature that extends from the second side of the main body portion" constitutes the improper reading of extraneous limitations into the claim, which have no basis in the claim. Indeed, no basis for the gratuitous addition of Johnson can be found in the specification or drawings. In fact, it is apparent that Johnson is attempting to improperly read an extraneous limitation into the claim with reference to the accused product in a veiled attempt to avoid infringement. Such is clearly proscribed by law, as presented earlier

-8-

herein.

## CLAIM 5:

## Claim Term:

wherein the height of each said curvilinear wall is significantly reduced prior to reaching said shaft aperture, thereby forming a flow chamber contiguous with said air chambers

## Agreement of Parties:

During the preparation of this brief, Ametek has been advised that Johnson has agreed to the definition advanced by Ametek for this claim term. Accordingly, Ametek is advised that the parties agree that the term "wherein the height of each said curvilinear wall is significantly reduced prior to reaching said shaft aperture, thereby forming a flow chamber contiguous with said air chambers" means "the distance from the base to the top of each curvilinear wall is diminished by a fairly large amount before arriving at said shaft aperture, thereby developing an enclosed space accommodating movement sharing an edge or boundary with said air chambers."

## ANALYSIS OF CLAIMS OF THE '843 PATENT (EXHIBIT B)

## CLAIM 1:

## Claim Term:

closely disposed about said outer periphery exhaust region.

## Ametek's Definition and Support:

The claim limitation "closely disposed about said outer periphery exhaust region," when given its ordinary and customary meaning, means "placed near and all around the

-9-

outside perimeter of the area where the air is let out." Again, there is no evidence that the patentee intended anything other than the ordinary and customary meaning of this term, and there is certainly no explicit definition of the term different from the ordinary meaning advanced in the patent, nor any evidence that the inventor disavowed or disclaimed such ordinary meaning as derived from dictionary definitions as set forth in Exhibit C.

The word "closely" means "near," and "disposed" means "placed." The word "about" means "all around," while "outer" means "outside," and "periphery" means "perimeter." Finally, a "region" is an "area," while "exhaust" means to "let out." Accordingly, in the context of the claims, the term "closely disposed about said outer periphery exhaust region" means "placed near and all around the outside perimeter of the area where the air is let out." The definition advanced by Ametek is fully consistent with the specification and drawings of the '843 patent. As is apparent from Figs. 1 and 2, and consistent with the cited claim limitation, "[t]he fan vanes 80, along with the outer periphery of the disks 76 and 78, form fan exhaust ports 84 which are equally distributed about the periphery of the fan 26. Collectively, the ports 84 can be referred to as an exhaust region 86." ('843 Patent, Col. 4, ll. 29-35).

## Challenge to Johnson' Definition:

Johnson contends that the term "closely disposed about said outer periphery exhaust region" should mean "near and on the same plane as the outer boundary of the fan." Once again, Johnson employs improper claim construction with its own infringing product in mind, and reads extraneous limitations from the specification into the claim. The claim term makes absolutely no reference to any "plane." The desire by Johnson for some of the

-10-

elements to be coplanar is born of its recognition of its infringement, without regard to the proper rules of construction. Once again, Johnson seeks to read extraneous limitations from the specification or drawings into the claim in order to avoid infringement, which is improper for the reasons presented earlier herein.

## CLAIM 11:

## Claim Term:

gathering chamber

## Ametek's Definition and Support:

The proper definition for the term "gathering chamber" is "an enclosed space for accumulation of working air." Again, there is absolutely no evidence that the patentee intended anything but the ordinary and customary meaning for this term. Accordingly, it should be construed in accordance with common dictionary definitions, consistent with the meaning adduced from the patent specification and drawings. In the context of the claim, there is "a gathering chamber. . . where the working air collects." According to the dictionary definitions of Exhibit C, a "chamber" is "an enclosed space," and the word "gathering" means "a collection or accumulation." Accordingly, a "gathering chamber" is literally "an enclosed space for accumulation" and, in the context of the patent claim, is "an enclosed space for accumulation of working air."

This construction is consistent with the specification and drawings of the '843 patent, such as Fig. 2, where a gathering chamber 68 is shown. The patent specification provides for "a gathering chamber 68 [that] is formed when the shroud 20 is secured to the end bracket 24." (Col. 4, ll.15-16). The patent further provides "the discharge area or gathering

-11-

chamber 68 is of a volumetric proportion slightly greater than the outlet discharge area of the guide vanes 58." (Col. 4, ll. 47-49). As provided at Col. 6 of the '843 patent, from lines 49-59, the gathering chamber unloads the pressure caused by the fan such that the air is gently expanded and its pressure reduced for exhaust from the shroud ports. In other words, the gathering chamber is an enclosed space for accumulation of working air such that the pressure of the air can reduce as the working air gathers prior to being exhausted.

**Challenge to Johnson's Definition:**

Johnson suggests that "gathering chamber" should be defined as "the space or cavity formed between the trailing ends of the vanes and the shroud wherein the trailing ends of the vanes are not positioned directly against the surface of the shroud." Clearly, the definition advanced by Johnson adds extraneous limitations to the claim that are otherwise not present and, accordingly, improperly reads limitations into the claims in an attempt to avoid infringement. The term required for construction is comprised of two words - - "gathering chamber." In order to define the gathering chamber as being formed between the trailing ends of the vanes and the shroud and wherein the trailing ends of the vanes are not positioned directly against the surface of the shroud, Johnson devises a limitation that is drawn from the specification and drawings, not from the claim. Such is totally improper.

**CLAIM 17:**

**Claim Term:**

defining a gathering chamber

**Ametek's Definition and Support:**

The meaning of the claim limitation "defining a gathering chamber" simply means

-12-

"delineating the outline of form of an enclosed space for accumulation of air." Again, there is no evidence whatsoever that the patentee intended anything other than the ordinary and customary meaning of the term at issue. Accordingly, the definition can be taken from dictionary definitions consistent with the presentation in the patent specification and drawings. The term "gathering chamber" is necessarily the same as in claim 11, treated directly above. From Exhibit C, the word "define" means "to delineate the outline or form of." Accordingly, the term "defining a gathering chamber" means "delineating the outline or form of an enclosed space for accumulation of air," for the very reasons presented above with respect to claim 11.

**Challenge to Johnson's Definition:**

Consistent with its definition of "gathering chamber" with respect to claim 11, Johnson construes the term "defining a gathering chamber" in claim 17 as "marking out the boundaries or limits of the space or cavity formed between the trailing ends of the vanes and the shroud, wherein the trailing ends of the vanes are not positioned directly against the surface of the shroud." While Ametek agrees that the word "defining" can be properly stated as "marking out the boundaries or limits," the remainder of the definition is totally improper as devising a limitation that is drawn from the specification and drawings, not from the claim.

## CONCLUSION

The claim terms in issue should be afforded their ordinary and customary meanings. There is absolutely no suggestion from the patentees/inventors that there is an explicit definition of the terms treated herein other than their ordinary meanings, as gleaned from

-13-

dictionaries and consistent with the specification and drawings of the patents. Those definitions have been advanced by Ametek, above. In contradistinction, each of the definitions advanced by Johnson has clearly been made with the accused product in mind, and has, in each instance, included extraneous limitations, either drawn from the patent specification and drawings, or from some other source not even related to the patent, in an effort to redraft the claims to exclude the accused products. Such constructions are totally improper, are proscribed by law, and should be quickly dismissed by this Court.

Respectfully submitted,

Ray L. Weber (CT 02148)
Renner, Kenner, Greive, Bobak,
Taylor & Weber
Fourth Floor, First National Tower
Akron, Ohio 44308
Telephone: (330) 376-1242
Facsimile: (330) 376-9646
rlweber@rennerkenner.com

Ben A. Solnit (CT 00292)
Gerald T. Giaimo (ctl4885)
Tyler, Cooper and Alcorn, LLP
205 Church Street
New Haven, CT 06510
Telephone: (203) 784-8205
Facsimile: (203) 777-1181
solnit@tylercooper.com
giaimo@tylercooper.com

Attorneys for Defendant
Ametek, Inc.
Gerald T. Giaimo-ctl4885

-14-

## CERTIFICATE OF SERVICE

A true copy of the foregoing **DEFENDANT'S BRIEF ON CLAIM CONSTRUCTION** was filed and served via first class mail, postage prepaid upon the following  this 1st day of March, 2005.

Edmund J. Ferdinand, III, Esq.
Grimes & Battersby, LLP
488 Main Ave., Third Floor
Norwalk, CT 06851

Stephen N. Weiss, Esq.
Gregory J. Fleesler, Esq.
Moses & Singer LLP
1301 Avenue of the Americas
New York, NY 10019

_____
Ray L. Weber -ct02148