# EXHIBIT 3

to the Affidavit of Stephen N. Weiss in Support of Johnson Electric Industrial
Manufactory, Ltd. and Johnson Electric North America, Inc.'s Motion for
Summary Judgment With Respect to Ametek's Through-Flow Causes of Action,
and Request for Attorney Fees Pursuant to 35 U.S.C. § 285 and 28 U.S.C. § 1927

# PATENT LICENSE AGREEMENT

This Agreement made and entered into as of this 30th day of ~~June~~ July, 2001, by and between AMETEK, Inc., a Delaware corporation having its principal office at 37 North Valley Road, Building 4, Paoli, Pennsylvania, U.S.A. ("Licensor"); and Johnson Electric Industrial Manufactory, Ltd., a Hong Kong corporation having its principal office at Johnson Building, 6-22 Dai Shun Street, Tai Po Industrial Estate, Hong Kong ("Licensee").

## WITNESSETH

Whereas Licensor is the owner by assignment and otherwise of all right, title and interest in and to certain Licensor Patent Rights relating to Patent Number 5,734,214 titled "Molded Through-Flow Motor Assembly."

Whereas Licensee desires to obtain a nonexclusive license under said Licensor Patent Rights; and

Whereas Licensor agrees to release the Licensee for past infringement of the Licensor Patent Rights.

Now, therefore, in consideration of the mutual covenants and promises herein contained, the parties agree as follows:

1. <u>Definitions</u>. As used herein, the term:

    (a) "Licensed Product" shall mean: Electric motors covered by one or more of the patent claims of Licensor Patent Rights and including, by way of example and not limitation, the electric motors that were the subject of <u>AMETEK, Inc. v. Johnson Electric Engineering, Ltd.</u>, Case No: 5:00CV2567 in the United States District Court for the Northern District of Ohio.

    (b) "Licensor Patent Rights" shall mean:

    (1) United States Letters Patent No. 5,734,214, Michael L. Gilliland, Robert A. Ciccarelli and Michael Coles, issued on March 31, 1998;

    (2) any divisions, reissues, continuations-in-part and extensions of the foregoing now

Page 1 of 11

        owned by Licensor or under which Licensor now has the right to grant licenses; and

    (3)  all foreign letters patent and patent applications claiming priority from or based on Licensor Patent Rights, including those listed in Appendix A, hereto.

(c)  "Net Selling Price" as used herein shall mean Licensee's invoice price to its customers for fully assembled Licensed Products licensed herein, less sales or excise taxes paid directly or indirectly by Licensee and separately itemized on the Licensee's invoice, and less normal and customary trade discounts, returns and allowances thereon. In the event there is no invoice price for Licensed Products *per se*, the Net Selling Price shall mean the established equivalent selling price for Licensed Products predetermined by legitimate quotations in response to bona fide inquiries (from other than Licensor), or if no such quotations exist, Licensee's selling price to non-related third parties. In the event Licensee sells Licensed Products to customers who are related to Licensee, the normal invoice price to non-related customers shall be the invoice price.

2. Grant.

  (a)  Upon the terms, royalty payments and conditions set forth herein, Licensor hereby grants to Licensee a worldwide, nonexclusive license under the claims of Licensor Patent Rights to make, have made, use, and sell Licensed Products.

  (b)  In consideration of the payments made to Licensor hereunder, Licensor hereby grants to Licensee a personal and nontransferable immunity from suit under the claims of Licensor Patent Rights.

  (c)  The foregoing grant of license and immunity shall not be construed as a license or immunity, by implication or otherwise, under any patent applications or patents owned by Licensor or under which Licensor has or acquires the right to grant licenses, other than those fitting

respectively within the definition of the Licensor Patent Rights.

3. <u>Royalty</u>.

   (a) Upon execution of this Agreement, Licensee shall pay Licensor the sum of $45,000 in compensation for all Licensed Products sold by Licensee through March 31, 2001 and concurrently therewith and in consideration thereof, Licensor shall and hereby does release, remise and forever discharge Licensee from any claim of infringement of Licensor Patent Rights by the manufacture, use, lease or sale by Licensee, prior to the effective date of this Agreement, of any Licensed Products.

   (b) Licensee agrees to pay Licensor a royalty of:

   (1) three percent (3%) of the Net Selling Price for each Licensed Product sold by the Licensee after the effective date of this Agreement; and

   (2) an additional three percent (3%) of the Net Selling price for each Licensed Product sold by the License after the date on which the Licensor's Divisional Patent issues. Licensor shall notify Licensee, in writing, within ten (10) days of the issuance of said Divisional Patent. Said additional 3% royalty shall become effective only in the event that there is no genuine controversy between the parties that the Licensed Products infringe one or more claims of the Licensor's Divisional patent. If there is any such genuine controversy, the parties agree to arbitrate the issue.

   (c) A Licensed Product is deemed sold at the time of first invoicing, or, if not invoiced, at the time of first shipment, delivery, or other transfer to other than Licensee, or when first actually put into use, including use by Licensee, whichever occurs the earliest.

(d) The accounting period shall be on a calendar quarterly basis for the respective periods ending on March 31, June 30, September 30 and December 31 of each year, beginning with the end of the period first following the date of this Agreement.

(e) The parties agree upon a third-party independent certified public accountant, ("Auditor", PricewaterhouseCooper) who shall conduct an accounting of Licensee's sales of Licensed Products within 90 days of the end of each period. Said Auditor shall furnish Licensor with a certified written statement of the total amount of payment due under this License Agreement for the period in question. No information relating to the quantity of licensed products sold, selling price, purchasers, etc., shall be included in the auditor's report. The Licensee's royalty payment shall accompany each such statement.

(f) Licensee agrees that it will at all times keep complete, true and correct books of account containing a current record of leases, sales and other data in sufficient detail to enable the royalties payable under this Agreement to be computed and verified by said Auditor. Licensee further agrees to permit said Auditor to have access for inspection and/or to make copies of said books of account at reasonable intervals during business hours. Licensor and Licensee agree that the cost of said Auditor shall be borne by Licensee.

(g) All royalties due hereunder shall be paid in United States Dollars. All royalties for an accounting period computed in other currencies shall be converted into United States Dollars at the buying rate for the transfer of such other currencies to United States Dollars as quoted by the Chase Manhattan Bank on the last day of such accounting period, or the business day thereafter if such last day shall be Sunday or a holiday.

(h) In the event any national government imposes any exchange restrictions prohibiting any payments required to be made by Licensee under this Agreement, an account in the name of Licensor shall be established in a financial institution of Licensor's choice in the country of such national government and all monies due Licensor shall be paid into such account, or at Licensor's election, payment shall be made to any account designated by Licensor that complies with such restrictions.

4. <u>Licensee Information</u>.

Licensor agrees that all documentation and information made available or disclosed to Licensor by Licensee as a result of or related to this Agreement, or any negotiations thereof, shall be received and treated by Licensor on a confidential basis.

5. <u>Marking</u>.

(a) Licensee agrees to affix to each Licensed Product or to the package containing such Licensed Products or to any insertion slip in the package with such Licensed Products a legible notice reading: "Licensed under one or more of the following United States Patents," followed by a list of applicable United States patent numbers taken from the list of Licensor Patent Rights or as may otherwise be instructed by Licensor.

(b) Neither the granting of the license herein or the acceptance of royalties hereunder shall constitute an approval of or acquiescence in Licensee's practices with respect to trademarks, trade names, corporation names, advertising, or similar practices with respect to the Licensed Products, nor does the granting of any license hereunder constitute an authorization or approval of, or acquiescence in the use of any trade name or trademark of Licensor or its affiliates in connection with the manufacture, advertising or marketing of Licensed Products; and Licensor hereby expressly reserves all rights with respect thereto.

6. <u>Duration and Termination</u>.

(a) Unless otherwise terminated as hereinafter set forth, this Agreement and the licenses under Licensor Patent Rights and the immunities under Licensor Foreign Patent Rights shall continue in full force and effect until the expiration date of the last of Licensor Patent Rights and Licensor Foreign Patent Rights.

(b) If Licensee shall at any time default in rendering any of the statements required hereunder, in the payment of any monies due hereunder, or in fulfilling any of the other obligations hereof, and such default shall not be cured within 15 days after receipt of notice thereof by Licensee from Licensor, Licensor shall have the right to terminate this Agreement by giving written notice of termination to Licensee; this Agreement thereby being terminated 15 days after such notice of termination is received by Licensee. Licensee shall have the right to cure any such default up to, but not after, the giving of such notice of termination.

(c) Licensor shall have the right to terminate this Agreement by giving written notice of termination to Licensee in the event of any one of the following, such termination being effective upon receipt of such notice or five days after such notice is mailed, whichever is earlier:

  (1) Liquidation of Licensee;
  (2) Insolvency or bankruptcy of Licensee, whether voluntary or involuntary;
  (3) Inability of Licensee to meet its obligations hereunder;
  (4) Failure of Licensee to satisfy any judgment against it;
  (5) Appointment of a trustee or receiver for Licensee; or
  (6) Any assignment by Licensee for the benefit of creditors.

(d) Subject to the provisions of Paragraph 6, Subparagraph (f) of this Agreement, Licensee may terminate this Agreement as to one or more of Licensor Patent Rights by giving Licensor three months prior written notice.

(e) The waiver of any default under this Agreement by Licensor shall not constitute a waiver of the right to terminate this Agreement for any subsequent or like default, and the exercise of the right of termination shall not have the effect of waiving any damages to which Licensor might otherwise be entitled.

(f) Termination of this Agreement, either totally or as to any one or more designated Licensor Patent Rights, for any cause whatsoever, shall in no matter interfere with, affect or prevent the collection by Licensor of any and all sums of money due to it under this agreement. Upon termination of this Agreement for any reason, Licensee's payments required by Paragraph 3, but not yet due, shall become immediately due and payable, and Licensee's inventory of Licensed Products for which payments are not yet required by Paragraph 3 shall either, at Licensee's option, (1) be included in Licensee's payments as though sales/leases of such Licensed Products had taken place prior to termination of this Agreement; or (2) be destroyed, provided appropriate certification thereof by an officer of Licensee is given to Licensor.

7. <u>Notices</u>.

(a) All notices, requests, demands and other communications under this Agreement or in connection therewith shall be given to or be made upon the respective parties as follows:

To Licensee:   Johnson Electric Industrial
               Manufactory, Ltd.
               Johnson Building
               6-22 Dai Shun Street
               Tai Po Industrial Estate
               Hong Kong
               Attn: Mr. Paul Tong
                     Chief Financial Officer

    To Licensor:        AMETEK, Inc.
                            37 North Valley Road
                            Building 4
                            Paoli, PA 19301-0801
                            U.S.A.
                            Attn: Donna F. Winquist
                                    General Counsel

    (b) All notices, requests, demands and other communications given or made in accordance with the provisions of this Agreement shall be in writing, shall be forwarded by certified mail, and shall be deemed to have been given when the signed receipt thereof is returned to the sender.

8. <u>Construction and Assignment</u>.

    (a) This Agreement shall be binding upon and inure to the benefit of Licensor, its legal representatives, successors, heirs and assigns.

    (b) This Agreement shall be binding upon and inure to the benefit of Licensee, but shall not be transferable or assignable without the prior written consent of Licensor.

    (c) This Agreement shall be deemed to be a contract made under the laws of the State of New York, and for all purposes shall be interpreted in its entirety in accordance with the laws of said State.

    (d) Nothing contained in this Agreement shall be construed as conferring upon Licensee or its customers, directly or by implication, estoppel or otherwise, any license under any trade secrets or know-how of Licensor, and no such license or other rights shall arise from this Agreement or from any acts, statements, or dealings resulting in or related to the execution of this Agreement.

9. <u>Negation of Warranty</u>.

No representation or warranty has been or is made by Licensor that Licensed Products or parts or subassemblies thereof may be manufactured, used, sold, or leased free of infringement of Patent Rights or other proprietary rights of others. It being understood the Licensor shall not be liable for any loss, damage, or expense arising from any claim of patent or other proprietary right infringement upon the manufacture, use, lease, or sale of Licensed Products or any portions thereof or the exercise of any license or right under this Agreement.

10. <u>Modification</u>.

This Agreement embodies all of the understandings and obligations between the parties with respect to the subject matter hereof. No amendment or modification of this Agreement shall be valid or binding upon the parties unless made in writing, signed on behalf of each of the parties by their respective proper officers thereunto duly authorized.

11. <u>Compliance With Laws</u>.

  (a) Any payment which requires governmental approval or permission under foreign exchange control laws or other laws, if any, shall be made in accordance with such laws.

  (b) Licensee agrees to comply with all provisions of the Export Administration Regulations of the United States Department of Commerce, as they currently exist and as they may be amended from time to time.

In witness whereof the respective duly authorized representatives of the parties have caused this Agreement to be executed as of the date first above written.

AMETEK, Inc.

(Licensor)

_____
Name

Vice President & General Counsel
Title

July 30, 2001
Date

JOHNSON ELECTRIC INDUSTRIAL MANUFACTORY, LTD.

(Licensee)

PAUL TONG
Name

CHIEF FINANCIAL OFFICER
Title

JULY 23, 2001.
Date

APPENDIX A


4570.5 FOREIGN FAMILY


**FILE NUMBER**                    **SERIAL/PATENT NO.**

4570.5.BR (Brazil)                 PI 9605503-0
4570.5.CN (Canada)                 2189708
4570.5.CR (Croatia)                P960535A
4570.5.CZ (Czechoslovakia)         PV 3296-96
4570.5.DE (Germany)                696 09 800.8
4570.5.ES (Spain)                  0 773 620 (E)
4570.5.FR (France)                 0 773 620 (E)
4570.5.GB (Great Britain)          0 773 620 (E)
4570.5.HK (Hong Kong)              98101186.5
4570.5.IE (Ireland)                0 773 620 (E)
4570.5.IN (India)                  1037/Del/97
4570.5.IT (Italy)                  0 773 620 (E)
4570.5.JA (Japan)                  311208/96
4570.5.KO (Korea)                  53074/1996
4570.5.MX (Mexico)                 199343
4570.5.MY (Malaysia)               PI 9604675
4570.5.SE (Sweden)                 0 773 620 (E)
4570.5.SL (Slovenia)               9600328
4570.5.TW (Taiwan)                 123755.
4570.5.VE (Venezuela)              1906-96
4570.5.YU (Yugoslavia)             P-9600329