UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Johnson Electric Industrial Manufactory, Ltd. et al.<br><br>   Plaintiffs<br>v.<br><br>Ametek, Inc.<br><br>   Defendant | )<br>)<br>)<br>)   Civil Action No: 303CV0098AVC<br>)<br>)<br>)<br>)<br>)<br>)   June 12, 2006 |

**AMETEK, INC.'S OPPOSITION TO JOHNSON ELECTRIC INDUSTRIAL MANUFACTORY, LTD. AND JOHNSON ELECTRIC NORTH AMERICA, INC.'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NOS. 6,166,462 AND 6,439,843 AND FOR INVALIDITY OF U.S. PATENT NO. 6,695,580**

Attorney for Defendant
Ametek, Inc.

Ray L. Weber (CT 02148)
Renner, Kenner, Greive, Bobak, Taylor & Weber
Fourth Floor, First National Tower
Akron, Ohio 44308
Telephone: (330) 376-1242
Facsimile: (330) 376-9646
rlweber@rennerkenner.com

Attorney for Defendant
Ametek, Inc.

Ben A. Solnit (CT 00292)
Tyler, Cooper and Alcorn, LLP
205 Church Street
New Haven, CT 06510
Telephone: (203) 784-8205
Facsimile: (203) 777-1181
bsolnit@tylercooper.com

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... iii

I. INTRODUCTION ................................................................................................. 1

II. ARGUMENT ......................................................................................................... 2

    A. Johnson's U66 Motor Assembly Infringes The '462 Patent ................. 3

        1. The Ramps ................................................................................. 3

        2. The Outer-Inner-Outer Limitation ........................................... 4

        3. The U66 Motor Assembly Is Structurally Distinct From The Japanese '699 Patent ................................................................. 5

    B. The Johnson U66 and U82 Motor Assemblies Infringe The '843 Patent ....... 7

        1. U66 and U82 Motor Assemblies Do Not Follow The Prior Art ........ 8

        2. The U66 And U82 Motor Assemblies Infringe Claims 10, 11, 12 and 14 Of The '843 Patent ................................................................. 9

        3. The U66 and U82 Motor Assemblies Infringe Claim 16 Of The '843 Patent ................................................................. 9

        4. The Prior Art Is Of No Avail .................................................... 10

      C.     The '580 Patent Is Valid .................................................. 10

          1.     The Japanese '699 Patent Does Not Anticipate The Claims Of The '580 Patent ........................................................ 11

          2.     The Double Patenting Defense Fails ............................... 12

III.    CONCLUSION ................................................................. 13

# TABLE OF AUTHORITIES

<u>Cases</u>

*Am. Hoist & Derrick v. Sowa & Sons, Inc.*,
725 F.2d 1350 (Fed. Cir. 1984) ................................................. 9,11

*Dolly, Inc. v. Spalding & Evenflo Companies, Inc.*,
16 F.3d 394 (Fed. Cir. 1994) ...................................................... 3

*Eli Lilly & Co. v. Barr Labortories, Inc.*,
251 F.3d 955 (Fed. Cir. 2001) ................................................... 12

*Free Motion Fitness v. Cybex Int'l, Inc.*,
423 F.3d 1343 (Fed. Cir. 2005) ................................................... 7

*Novartis Corp. v. Ben Venue Laboratories, Inc.*,
271 F.3d 1043 (Fed. Cir. 2001) .................................................... 3

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Johnson Electric Industrial Manufactory, Ltd. et al.<br><br>    Plaintiffs<br>v.<br><br>Ametek, Inc.<br><br>    Defendant | )<br>)<br>)  Civil Action No: 303CV0098AVC<br>)<br>)<br>)<br>)<br>)<br>)  June 12, 2006 |

**AMETEK, INC.'S OPPOSITION TO JOHNSON ELECTRIC INDUSTRIAL MANUFACTORY, LTD. AND JOHNSON ELECTRIC NORTH AMERICA, INC.'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NOS. 6,166, 462 AND 6,439,843 AND FOR INVALIDITY OF U.S. PATENT NO. 6,695,580**

Now comes Defendant, Ametek, Inc. ("Ametek"), in opposition to the Motion of Plaintiffs (jointly "Johnson") identified in the caption above. Such motion should be denied for the reasons presented below.

## I. INTRODUCTION

This case is one of patent infringement and breach of a Patent License Agreement. At issue here is the infringement of U.S. Patents 6,166,462 ("the '462 patent") and 6,439,843 ("the '843 patent"),

1

and the validity of U.S. Patents 6,695,580 ("the 580 patent"). At issue are two of Johnson's by-pass motor assemblies, referred to as the "U66 Motor Assembly" and "U80 Motor Assembly."

While there should be no genuine issue of material fact as to the agreed-upon and judicially determinated construction of the claims of the '462, '843 and '580 patents, or the structural features of the U66 and U82 Motor Assemblies, the parties disagree as to the nature and extent of the disclosures of the various prior art references advanced by Johnson and the import of amendments and arguments advanced during the prosecution of the patents.

It is clear that the U66 and U82 Motor Assemblies infringe the '462 and/or '843 patents. Moreover, as to the '580 patent, it is particularly noteworthy that Johnson does not contest the infringement of that patent, but advances weak challenges to its validity. The issue of infringement is separately addressed in Ametek's pending Motion for Summary Judgment. As is further apparent below, there is no clear and convincing evidence of invalidity of the '580 patent.

## II. ARGUMENT

In patent cases, as in others, summary judgment may be granted in favor of a movant only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Fed. Cir. Civ. P. 56(c)). It is fundamental that summary

judgement is appropriate only where the evidence of record "fails to establish a material issue of fact essential to the patentee's case," reviewing all facts in a "light most favorable to the nonmovant and drawing all inferences in the nonmovant's favor." *Novartis Corp. v. Ben Venue Laboratories, Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001).

### A.     Johnsons' U66 Motor Assembly Infringes The '462 Patent

In challenging Ametek's contentions that the U66 Motor Assembly infringes the '462 patent, Johnson advances the purported absence of two claim limitations (1) "a first ramp surface" and a "second ramp surface," and (2) associated ramp walls that align and form an "outer-inner-outer" configuration. (Johnson Brief, p. 9) Johnson contends that the U66 Motor Assembly has neither.

#### 1.     The Ramps

Claim 1 of the '462 patent calls for a diffuser and a fan end bracket. Each with ramped surfaces and ramp walls, the ramped surfaces engaging such that the ramp walls align. In effect, the engagement of the ramped surfaces result in one continuous ramped surface defined by one continuous ramp wall.

It is fundamental that infringement is not avoided by combining into one piece what was claimed as two. *Dolly, Inc. v. Spalding & Evenflo Companies, Inc.*, 16 F.3d 394, 398-99 (Fed. Cir. 1994).

3

Moreover, it is noteworthy that Johnson does not assert that there is any prosecution history estoppel directed to the limitation of the first and second ramped surfaces and associated ramp walls. The prosecution history estoppel advanced by Johnson deals only with the "outer-inner-outer" configuration. Accordingly, as testified by Shawcross, the accused U66 Motor Assembly infringes under the doctrine of equivalents because it combines the first and second ramped surfaces into a single ramped surface bounded by a single ramp wall. (Attached Ex. A, Shawcross Dep., p. 140, l. 5 - p. 143, l. 15)(Attached Ex. B., Shawcross Aff., ¶5).

### 2. The Outer-Inner-Outer Limitation

The outer-inner-outer limitation of the claim is literally present in the accused U66 Motor Assembly. In the construction of claim 1 agreed to by the parties, the "vertical boundary of a sloping surface . . . starts from an outer boundary of the diffuser, and continues to an inner boundary of the diffuser . . . continuing from an inner boundary of the diffuser . . . to an outer boundary of the diffuser." (Johnson Brief, p. 8). This structure is all present in the U66 Motor Assembly. The vertical boundary of each ramp ("sloping surface") starts at the top of the ramp at the outer periphery, goes across the top of the ramp to the inner periphery in alignment with the fan, then follows the inner periphery back to the outer periphery at the bottom of the ramp. (Attached Ex. A, Shawcross Dep., p. 143, l. 16 - p. 145, l.19) (Attached Ex. B, Shawcross Aff., ¶6).

4

The claim construction agreed upon by the parties simply requires that the vertical boundary of the sloping surface ("ramp") have an "outer-inner-outer" configuration. As is apparent from a review of the U66 Motor Assembly, those boundaries are present and clearly apparent. The top outer edge of the ramp is at the outer periphery of the diffuser (structure with flow passages), it passes directly to an inner boundary that is aligned with the fan periphery, the ramped surface vertical boundary then tracks the fan periphery for a short distance and then extends outwardly again to the outer edge of the diffuser.

Accordingly, Ametek does not argue equivalence of this claim limitation, but the literal presence of that structure in the accused U66 Motor Assembly. The arguments of Johnson clearly fail because Johnson's Brief and the Pospis Aff. Ex. A thereof limit the vertical boundary of the ramp (sloping surface) to a ramp wall, ignoring the vertical boundary or terminal edge of the ramp at its uppermost portion that extends from the outer periphery to the inner periphery. In so doing, Johnson ignores the claim constructions that are the law of this case.

### 3. The U66 Motor Assembly Is Structurally Distinct From The Japanese '699 Patent

Johnson suggests that its U66 Motor Assembly is nothing more than a copy of the teachings of the Japanese '699 patent. Nothing could be further from the truth.

5

If Johnson would have the Court believe that it has done nothing but copy the motor of the Japanese '699 patent, then the limitations of claim 1 of the '462 patent should be present in that piece of prior art. That is simply not the case. This prior art clearly shows a fan 15 that extends with its peripheral opening 17 well beyond the ramped wall 29. In other words, the "inner" portion of the ramp is certainly not "in circumferential alignment with the outer periphery of said working air fan" as required by the claim. Indeed, the peripheral opening 17 of the fan 15 is shown in Fig. 1 of the Japanese '699 patent as being centered over the ramp 28, and the patent specification says nothing to the contrary.

Further, claim 1 of the '462 patent requires that the "channels for air [air flow passages] are in registration with corresponding . . . staked apertures." (Johnson Brief, p. 8). This structure is not shown or suggested by the Japanese '699 patent. The air outlets 22 of this prior art patent are not shown as being in registration with the flow passages defined by the ramps 28. As shown in Fig. 1, the ramp 28 actually intersects the outlet 22, in total contradistinction to the registration required by claim 1. The specification adds no further clarification, nor does it offer any teaching that such registration is present or desired. (Attached Ex. B, Shawcross Aff., ¶7).

In sum, it is not sufficient for Johnson to suggest, well after the fact, that it has found a piece of prior art that it purportedly copied - - particularly when the structure of the Johnson U66 Motor

6

Assembly is remarkably different from that prior art. Clearly, claim 1 of the '462 patent is quite different from the Japanese '699 patent, while covering the U66 Motor Assembly.

**B.   The Johnson U66 And U82 Motor Assemblies Infringe The '843 Patent**

Johnson misstates the requirements of claim 1 of the '843 patent in an attempt to avoid its clear infringement by the U66 and U82 Motor Assemblies. Johnson ignores the fact that claim 1 sets forth a "by-pass motor assembly, <u>comprising</u>" various enumerated elements. The word "comprising," is an open ended term in claim language, accommodating structure other than that specifically recited. *Free Motion Fitness v. Cybex Int'l, Inc.*, 423 F.3d 1343, 1353 (Fed. Cir. 2005) The claim does not state that a plurality of vanes, alone, form a fan chamber that receives the working air fan. Nor does the claim state that the vanes receive the fan. The claim simply states that the vanes serve to establish a chamber that receives the fan. That is exactly the case in the U68 and U82 Motor Assemblies. In his deposition, when looking only at the end bracket of the U66 Motor Assembly, Shawcross noted that the chamber was formed by the vanes and ramps of the motor and included the area underneath the fan and down around the vanes. (Attached Ex. A, Shawcross Dep. p. 120, l.24 - p. 123, l. 9 and Exhibit 13 thereof.). Shawcross further avers that the U66 and U82 Motor Assemblies have similar fan chambers that are formed by the vanes. (Attached Ex. B, Shawcross Aff.,¶8).

7

It is particularly noteworthy that the '843 patent makes it clear that it is not the vanes, alone, that form the fan chamber. In the specification, it is stated at col. 5, ll. 57-59, that a "significant feature of the present invention is that the plurality of vanes 52, along with inner rim 40 and the base 42, form a fan chamber 46 in which the fan 26 rotates." (Pospis Aff. Ex. D., attached to Johnson's Brief). In other words, the patent specification makes it clear that, while the vanes 52 serve to form the fan chamber, they do not form it alone. While the participation of the vanes in forming the fan chamber is set forth in the claim, the claim does not preclude other structure also serving to form the fan chamber in conjunction with the vanes. In effect, Johnson seeks to read a limitation into the claims that is simply not there - - that the vanes alone form the fan chamber, or that the fan is received by the vanes. Such is simply not the case. (Attached Ex. B, Shawcross Aff.,¶8).

Johnson's attempt to avoid the all elements rule by suggesting that the fan chamber is not present must fail. While a fan chamber defined solely by the vanes may not be present in the Johnson U66 and U82 Motor Assemblies, a fan chamber formed by such vanes is present.

1.   **U66 and U82 Motor Assemblies Do Not Follow The Prior Art**

Again, Johnson suggests that its U66 and U84 Motor Assemblies could not possibly infringe the '843 patent because they are simply embodiments of the prior art Japanese '699 patent. As a starting point, it should be noted that Johnson never made an analysis of the U82 Motor Assembly

8

with respect to the prior art Japanese '699 patent. That assertion was only with regard to the U66 Motor Assembly. As presented above, the U66 motor assembly is not a reconstruction of the Japanese '699 patent. Moreover, the same shortcomings pertain to the U82 Motor Assembly, which is not made in compliance with the Japanese '699 patent, for the very reasons presented above with respect to the U66 Motor Assembly. (Attached Ex. B, Shawcross Aff., ¶9).

### 2. The U66 And U82 Motor Assemblies Infringe Claims 10, 11, 12 and 14 Of The '843 Patent

Johnson suggests that claims 10, 11, 12 and 14 avoid infringement for failure to have a fan chamber that receives the working air fan. But, as presented above, those arguments fail because the accused motor assemblies clearly have a fan chamber formed by a plurality of vanes. Again, while additional structure may accompany the vanes to form the fan chamber, the vanes, nonetheless, serve to form the fan chamber.

### 3. The U66 and U82 Motor Assemblies Infringe Claim 16 Of The '843 Patent

Johnson contends that neither the U66 nor the U82 Motor Assembly has a shoulder extending from the edge of the end bracket or vanes extending from the shoulder. That is simply not the case. As Shawcross pointed out in his deposition, the U66 Motor Assembly has that literal structure (Attached Ex. A, Shawcross Dep., p. 125, l. 23 - p. 127, l. 23), as does the U82 Motor Assembly

9

(Attached Ex. A, Shawcross Dep., p. 162, l. 5 - p. 163, l. 22). As Shawcross testified, the shoulders are the ramps which, according to the agreed construction, are an "area around the edge of a higher part connecting it to a lower part," and the walls of the ramps are vanes or "more than one blade" as the agreed claim construction provides. (Attached Ex. B, Shawcross Aff., ¶10).

Notably, in rewriting claim 16 on page 22 of its Brief, Johnson left out a portion. The last paragraph of claim 16 should read:

> more than one blade extending from said shoulder ("an area around the edge of the higher part connecting it to a lower part"), said blade facilitating movement of air expelled by the tapered working fan out the vent.

Clearly, the ramps are the shoulders and the walls of the ramps are the vanes or blades, resulting in literal infringement of the Johnson motors.

### 4.     The Prior Art Is Of No Avail

Again, with regard to claim 16 of the '843 patent, Johnson pleads that it cannot infringe because its "U66 and U82 Motor Assemblies . . . are structurally the same as the Japanese '699 patent." As presented above, that is simply not the case.

### C.     The '580 Patent Is Valid

Confronted with clear infringement of the '580 patent, Johnson resorts to make-weight arguments of invalidity, neither satisfying the clear and convincing standard required of such proof.

10

### 1. The Japanese '699 Patent Does Not Anticipate The Claims Of The '580 Patent

Johnson contends that the Japanese '699 patent anticipates the claims of the '580 patent. Johnson does so with very conclusory statements, glossing over the teachings of the Japanese '699 patent that were clearly appreciated by the examiner. It is particularly noteworthy that the Japanese '699 patent was of record in the prosecution of the '580 patent, and is identified in the "References Cited" portion of that patent. With the Japanese '699 patent having been of record in the prosecution of the '580 patent, the hurdle to overcome the presumption of validity is heightened. *Am. Hoist & Derrick v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360 (Fed. Cir. 1984). Indeed, it is presumed that the examiner did his job. *Id.*

Notably, claim 1 of the '580 patent requires a very specific relationship between the channels of the end bracket and the outer periphery of the working air fan. It requires "said channels extend from an inner periphery in circumferential alignment with the outer periphery of said working air fan toward an outer periphery of said end bracket." (claim 1, '580 patent). In other words, as the parties have agreed, the inner periphery must be in a "straight line position with the outer periphery of the working air fan." Such is clearly not the case in the Japanese '699 patent, in which the fan 15 extends into the mid section of the channels or passages 29. See Fig. 1 of that patent. There is certainly no discussion in the text of the Japanese '699 patent that would suggest that this limitation

11

is present. (Attached Ex. B, Shawcross Aff., ¶11).

Because claim 1 is not anticipated by the Japanese '699 patent, claim 2 cannot be anticipated. Further, with regard to claim 2, the statement of Johnson that "the cross-sectional area of the air passageways of the Japanese '699 patent gradually expanded as they approach the air outlets. . . [because] [t]hose passages are 'inclines,' and hence gradually get larger as they approach each outlet," is simply wrong. Indeed, as noted by Johnson, those air passageways also slope outwardly "toward the shroud" which likely causes them to correspondingly reduce in size or to contract. Notably, the Japanese '699 patent is silent on whether the combination of downward and outward translation of the channels results in a net expansion or contraction of the channels - - or if, in fact, they offset each other. In any event, it is a contortion of the Japanese '699 patent to suggest that it teaches that the channels gradually expand as they get closer to said at least one exhaust aperture," as set forth in claim 2 of the '580 patent. (Attached Ex. B, Shawcross Aff., ¶12).

### 2. The Double Patenting Defense Fails

The double patenting defense raised by Johnson fails on its face. As noted by Johnson, "[T]he doctrine is necessary to prevent a patent term extension through claims in a second patent that are not patentably distinct from those in the first patent." (citing *Eli Lilly & Co. v. Barr Labortories, Inc.*, 251 F.3d 955, 967 (Fed. Cir. 2001)). There is simply no term extension at issue in this case.

The '580 and '843 patents will expire on the same day. Accordingly, the concept of "unjustified timewise extension of the right to exclude" does not pertain.

Johnson only addresses obviousness-type double patenting. As presented in Ametek's pending Motion for Partial Summary Judgment Regarding Infringement and Validity of U.S. Patent 6,695,580, to the extent that obviousness-type double patenting is an issue, it may be cured by a terminal disclaimer - - causing both patents to expire on the same date - - so that there is no term extension. Here, both patents will expire on November 16, 2020, twenty years after the filing of the '843 patent, which is the parent of the '580 patent. While a terminal disclaimer is not required to cause both patents to expire on the same date, precluding the problems incident to an obviousness-type double patenting situation, to the extent that the Court would deem a terminal disclaimer necessary, Ametek is willing to file the same with the United States Patent Office. (Attached Ex. B, Shawcross Aff., ¶13). Thus the issue is moot.

### III. CONCLUSION

The arguments and contentions of Johnson must fail for the various reasons presented above. Ametek's patents are infringed or, at the very least, there are genuine issues of material fact regarding such infringement. Moreover, Johnson is not practicing the prior art, for its U66 and U82 Motor Assemblies, while satisfying the asserted claims of the Ametek patents, do not correspond

13

with the structure of the prior art Japanese '699 patent. Finally, the '580 patent does not violate the rule against obviousness-type double patenting and, even if it did, the same could be remedied by the filing of a terminal disclaimer.

Johnson's Motion should be summarily dismissed.

/s/ Ben Solnit

Ben A. Solnit (CT 00292)
Tyler, Cooper & Alcorn, LLP
205 Church Street
New Haven, CT 06510
Tel: 203 784-8205
Fax: 203 777-1181
bsolnit@tylercooper.com

Ray L. Weber (CT 02148)
Renner, Kenner, Grieve, Bobak,
Taylor & Weber
Fourth Floor, First National Tower
Akron, Ohio 44308
(330) 376-1242
(330) 376-9646
rlweber@rennerkenner.com

Attorneys for Defendant, Ametek, Inc.

14

with the structure of the prior art Japanese '699 patent. Finally, the '580 patent does not violate the rule against obviousness-type double patenting and, even if it did, the same could be remedied by the filing of a terminal disclaimer.

Johnson's Motion should be summarily dismissed.

/s/ Ben Solnit
Ben A. Solnit (CT 00292)
Tyler, Cooper & Alcorn, LLP
205 Church Street
New Haven, CT 06510
Tel: 203 784-8205
Fax: 203 777-1181
bsolnit@tylercooper.com

Ray L. Weber (CT 02148)
Renner, Kenner, Grieve, Bobak,
Taylor & Weber
Fourth Floor, First National Tower
Akron, Ohio 44308
(330) 376-1242
(330) 376-9646
rlweber@rennerkenner.com

Attorneys for Defendant, Ametek, Inc.

## CERTIFICATE OF SERVICE

A true copy of the foregoing AMETEK, INC.'S. OPPOSITION TO JOHNSON ELECTRIC INDUSTRIAL MANUFACTORY, LTD. AND JOHNSON ELECTRIC NORTH AMERICA, INC.'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NOS. 6,166,462 AND 6,439,843 AND FOR INVALIDITY OF U.S. PATENT NO. 6,695,580 was served upon the following this 12th day of June, 2006, as indicated:

Edmund J. Ferdinand, III (203) 849-9300  
Grimes & Battersby, LLP                    (First-Class Mail)  
488 Main Ave., Third Floor  
Norwalk, CT 06851  

Stephen N. Weiss (212) 554-7700  
Moses & Singer LLP                         (Overnight Mail)  
405 Lexington Ave.  
The Chrysler Building  
New York, NY 10174  

_____  
Ben A. Solnit (CT 00292)

15