# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

- - -

JOHNSON ELECTRIC INDUSTRIAL )

MANUFACTORY, LTD., et al.,      )

      Plaintiffs,                )

      vs.                        ) Case 303CV0098AVC

AMETEK, INC.,                   )

      Defendant.                 )

- - -

Videotaped Deposition of JAMES P. SHAWCROSS, a Witness herein, called by the Plaintiffs for cross-examination pursuant to the Federal Rules of Civil Procedure, taken before me, the undersigned, Michael G. Cotterman, a Notary Public in and for the State of Ohio, at Renner, Kenner, Greive, Bobak, Taylor & Weber, Fourth Floor FirstMerit Tower, Akron, Ohio, on Monday, the 6th day of December, 2004, at 10:05 o'clock a.m.

-------------------------------------------------

BISH & ASSOCIATES, INC.
812 Key Building
Akron, Ohio  44308-1303
330-762-0031
1-800-332-0607
FAX 330-762-0300
E-Mail: bishassociates@neo.rr.com

EXHIBIT A

2

APPEARANCES:


    On Behalf of the Plaintiffs:

       Moses & Singer, LLP

    By:  Stephen N. Weiss, Att. at Law
        Gregory J. Fleesler, Att. at Law
        1301 Avenue of the Americas
        New York, NY  10019
        (212) 554-7800


    On Behalf of the Defendant:

       Renner, Kenner, Greive, Bobak,
       Taylor & Weber

    By:  Ray L. Weber, Attorney at Law
        FirstMerit Tower, Fourth Floor
        Akron, Ohio  44308
        (330) 376-1242


ALSO PRESENT:

       Roger Baines
       Mirror Image Video Service


           - - -

120

1     A.    It's over here now.

2     Q.    Take it off, yeah, lift it up.

3     A.    (Doing as requested.)

4     Q.    Okay.  Indicating the fan, the

5  working fan.

6               Said working air fan having an

7  outer periphery exhaust region.  Does the

8  working air fan have that?

9     A.    Yes, it does.

10    Q.    Can you indicate it?

11    A.    Out here.

12    Q.    Indicating the outer periphery, okay.

13              A shroud having an intake eyelet

14  and at least one exhaust aperture, do you see

15  the shroud?

16    A.    This is the shroud.

17    Q.    Can you indicate the, the intake

18  eyelet?

19    A.    The intake eyelet's here.

20    Q.    Indicating the top center.

21              And could you indicate at least

22  one exhaust aperture?

23    A.    Over here on the side.

24    Q.    Okay, indicating the aperture.

25              An end bracket having a shaft hole

121

1    through which said shaft extends.  Which is

2    the end bracket?

3        A.    This is the end bracket.

4        Q.    Okay.  Indicating a black plastic --

5    not plastic, component.

6              Having a shaft hole, is there a

7    shaft hole there?

8        A.    Right here.

9        Q.    Indicating, okay.  Through which said

10   shaft extends, there's no shaft there now but

11   that's where it would go through.

12             Said end bracket and said shroud

13   partially enclosing said working air fan,

14   would that --

15       A.    (Doing as requested.)

16       Q.    Okay.  The witness just enclosed it.

17             Wherein rotation of said working

18   air fan draws air in through said intake

19   eyelet, which you just indicated earlier?

20       A.    Uh-huh.

21       Q.    And exhausts the air through at least

22   one exhaust aperture, and that's the aperture

23   you indicated earlier as the exhaust aperture,

24   correct?

25       A.    Yes.

122

1      Q.    Next element, said end bracket having

2    a plurality of vanes that form a fan chamber

3    that receives said working air fan.  Can you

4    show us that if it's there?

5      A.    These would be the vanes.

6      Q.    Indicating the outer periphery, which

7    you just called the end bracket, correct?

8      A.    Pardon?

9      Q.    Indicating the outside of what you

10   had just previously referred to as the end

11   bracket?

12     A.    The outside, no, the vanes go like

13   all the way here, from the fan exhaust to

14   outside.

15     Q.    Okay.  And now it says that the

16   plurality of vanes form a fan chamber, where

17   is the fan chamber?

18     A.    I believe it's in here.

19     Q.    In where?

20     A.    In this area right here, the vane and

21   the ramp.

22     Q.    So the fan is inside that vane and

23   ramp?

24     A.    The fan is up here, okay.

25     Q.    Indicating the top?

123

1    A.    In the chamber, like I drew here, I

2    had the fan --

3    Q.    When you say drew here, indicating

4    exhibit?

5    A.    Exhibit 13.

6    Q.    All right.

7    A.    All right.  The fan chamber being the

8    area underneath the fan and down around the

9    vanes.

10   Q.    Okay.  So you're saying that what

11   you're holding there, the Johnson product, has

12   a plurality of vanes that form a fan chamber

13   that receives said working air fan?

14   A.    Yes.

15   Q.    Okay.  What does the word chamber

16   mean?

17   A.    Area.

18   Q.    Okay.  And what does it mean receives

19   said working air fan?

20   A.    I guess it has the -- I have to think

21   about that, what does receives the working air

22   fan mean.

23          It means it's got the working air

24   fan right next to it and it receives the air

25   from the working air fan.

124

1    Q.    Well, it didn't say receives the air

2    from, it says receives said working air fan,

3    so what does that mean to you?

4    A.    And I just told you what it meant to

5    me, it means the fan is nearby and receives

6    the air from there.

7    Q.    So receives said working air fan

8    means the fan is nearby and receives the air

9    from it?

10   A.    Right.

11   Q.    Then it says wherein said plurality

12   of vanes are closely disposed about said outer

13   periphery exhaust region?

14   A.    Uh-huh.

15   Q.    Do you see that?

16   A.    Yes, I do.

17   Q.    Show me that?

18   A.    Okay.  Here's the outer exhaust

19   region fan and here's where the vanes are,

20   right here at the -- well, let's see if I can

21   line this up, the vanes almost match the OD,

22   the outside diameter of the fan.

23   Q.    So you're saying that the fan being

24   on top of that end bracket is the same as the

25   fan being in a chamber comprised of a

125

1    plurality of vanes as in your figure four of

2    the patent, correct?

3        A.    I'm saying that the plurality of

4    vanes start at the fan exhaust, so it receives

5    the fan.

6        Q.    And the chamber is?

7        A.    The chamber is underneath the fan and

8    down through these little passages.

9        Q.    Claim ten says that line five, column

10   eight, said end bracket --

11       A.    Okay.  I'm sorry, what?

12       Q.    I'm reading the patent again.  Said

13   end bracket having a plurality of vanes --

14            MR. WEBER:  No, we're asking where

15   are you reading from?

16            THE WITNESS:  Where are you?

17   BY MR. WEISS:

18       Q.    I'm sorry, I'm reading five, I meant

19   to read line ten.

20       A.    Line ten at which column?

21       Q.    Eight.

22       A.    Thank you.

23       Q.    It says wherein said end bracket has

24   a sloping shoulder, can you show us, is there

25   a sloping shoulder in Johnson's end bracket?

126

1      A.    Uh-huh, I believe the sloping

2   shoulder goes from up here down to the exhaust

3   ports.

4      Q.    Okay.  Indicating what looks like an

5   outer ramp, correct?

6      A.    A sloping shoulder.

7      Q.    Okay.  What is a shoulder?

8      A.    It's a shoulder.  I don't have as far

9   as recommendations for you on terms, it's a

10   shoulder.

11      Q.    So you don't have a plain meaning for

12   the word shoulder?

13      A.    I think it is a plain meaning, it's a

14   shoulder.

15      Q.    All right.  What's the difference

16   between shoulder and vane as used on that end

17   bracket, or is it the same?

18      A.    The vane, the definition of that was

19   like a rib or a blade, and the shoulder is a

20   sloping shoulder that forms the channel with

21   the vane, therefore I say the vanes are with

22   the shoulders there.

23      Q.    Okay.  Let's go slower.  So the vane,

24   indicate the vane?

25      A.    Here.

127

1    Q.    So are you indicating, like what do

2  you mean, the wall, the inside wall?

3    A.    Yes, that's what we're calling the

4  vane, yeah.

5    Q.    That's the vane and the shoulder is

6  what?

7    A.    The shoulder is here.

8    Q.    The shoulder is this sloping part?

9    A.    The sloping ramped surface.

10    Q.    Okay.  Now, it says wherein said end

11  bracket has a sloping shoulder such that said

12  vanes slope in a corresponding manner.  Does

13  that have a sloping shoulder --

14    A.    Uh-huh.

15    Q.    -- with vanes that slope in a

16  corresponding manner?

17    A.    Well, the sloping shoulder is here

18  and the vane slopes down with them, so...

19    Q.    So where does the vane begin and

20  where does the --

21    A.    Well, the vane is this surface and

22  it's starting up here and it's trailing down

23  here and it follows the slope of this ramp.

24    Q.    Okay.  Now, can you show the --

25  let's turn to claim eleven, the last element.

1  infringement under the doctrine of

2  equivalence, that's what you're saying in your

3  interrogatory response?

4      A.    Yes.

5      Q.    You just read the claim on the motor

6  directly, so why do you say doctrine of

7  equivalence, why isn't it literal?

8      A.    Because if you read H here, you know,

9  it says that combined in the Johnson bypass

10  motor such that a single plurality of ramped

11  surfaces of larger size are provided, and

12  that's why it's under the doctrine of

13  equivalence.

14      Q.    But when we were reading the claim

15  before, you read it literally on the diffuser,

16  did you not?

17      A.    I read the claims on the diffuser,

18  yes.

19      Q.    Okay.  So what is missing from the

20  claim language that you need the doctrine of

21  equivalence?

22      A.    Well, it says here that it's a single

23  plurality of ramped surfaces, a larger size

24  are provided, a singular plurality of ramped

25  surfaces I believe is what is being claimed as

141

1    equivalence.

2        Q.    The equivalent of what?

3        A.    The equivalence of ramped surfaces in

4    the claim of patent 462.

5        Q.    Could you read, yeah, read in the 462

6    patent claim what you're saying the -- that's

7    the equivalent of, the larger, the single

8    plurality of ramp surfaces of larger size are

9    provided, that's the equivalent of what

10   element?

11       A.    Of the ramp surfaces that are in this

12   claim.

13       Q.    Read, read the language in the claim

14   that you're saying it's the equivalent of?

15       A.    Well, you're going to have to give me

16   time.

17       Q.    Absolutely.

18       A.    Okay.  I believe it's saying that the

19   one single plurality of ramp surfaces of

20   larger size is equivalence to the last two

21   paragraphs in claim one of patent 462.

22       Q.    So why don't you read the language

23   that is --

24       A.    Do you want me to read it out loud?

25       Q.    Read whatever you say it's the

142

1    equivalent of, whatever you say is missing

2    from the Johnson, what is literally missing

3    from the Johnson diffuser that you need to

4    resort to the doctrine of equivalence?

5         A.    Well, this here, I mean the doctrine

6    of equivalence is that the claims both have a

7    large ramp that connects, that runs along the

8    side of the vanes, and this is a larger ramp.

9         Q.    Larger than what?

10        A.    Larger than could be if done under

11   the claims of this patent.

12        Q.    Well, tell me why, what language in

13   the claims of the patent are you talking

14   about?

15        A.    Well, it says first and second ramp

16   surfaces and this first ramp surface is a

17   combination of the first and second.

18        Q.    So it's the equivalent of a first and

19   second ramp surface?

20        A.    Yes.

21        Q.    What function does the first and

22   second ramp surface fulfill in the patent?

23        A.    They make a continuous shoulder that

24   gets the air from the exhaust area of the fan

25   to the end, the exhaust apertures.

143

1    Q.    And how does it do it?

2    A.    It helps, it makes the surface of the

3    air channel that directs the air from the fan

4    to the exhaust.

5    Q.    Is that air channel expanding in the

6    Johnson diffuser?

7    A.    Yes.

8    Q.    Show us where?

9    A.    It expands dramatically as it goes

10   from here, where it may be rather small, down

11   to there.

12   Q.    And what is the -- you said the same

13   way to achieve the same result, what is the

14   result that you're talking about?

15   A.    Smooth expansion of the air again.

16   Q.    Okay.  Do you have in the Johnson

17   embodiment the same outer inner outer that

18   you're referring to in claim one, or is it the

19   equivalent of the outer inner outer?

20   A.    Let me read outer inner outer.

21   Q.    Okay.  Read it again.

22   A.    Because when I was reading claim one

23   I didn't focus on that part.

24   Q.    Okay.  It's the column five.

25   A.    Okay.  Column five?

144

1    Q.    Yes.

2    A.    Okay.  I don't see an outer inner

3    outer in here.

4    Q.    Does a diffuser with a first

5    plurality of ramp surfaces, each said first

6    ramp surface having a first ramp wall which

7    extends from an outer periphery of said

8    diffuser --

9    A.    Uh-huh.

10    Q.    -- to an inner periphery in

11    circumferential alignment with an outer

12    periphery of said working air fan?

13              MR. WEBER:  Objection, was that a

14    question or?

15    BY MR. WEISS:

16    Q.    Yes.  You have to continue with the

17    second, I left it out, the second paragraph.

18    A.    Okay.

19    Q.    Is that literally, literally present

20    in the Johnson diffuser?

21    A.    Well, what I read is you have a ramp

22    and a vane that go from the outer periphery of

23    the fan area.

24    Q.    Right.

25    A.    It comes around and goes and

145

1    terminates at the outer periphery of the, of

2    the bracket.

3         Q.    Right.

4         A.    And that's what I read and that's

5    what I see.

6         Q.    So you see it literally there, so

7    it's a literal interpretation?

8         A.    I see the vane doing the same

9    beginning point and the same end point as

10   mentioned in this patent.

11        Q.    Okay.  So that you don't have to

12   resort to the doctrine of equivalence, it's

13   the same?

14        A.    I'm not a lawyer, I don't know.

15        Q.    Okay.  But you see it literally

16   present there?

17        A.    I see it going from the same location

18   in as mentioned in the claim, from the outer

19   periphery of the fan to the bracket.

20             MR. WEISS:  Do you have the U82

21   motor?  We're marking now what has been

22   referred to as -- I'm sorry.

23                        (Plaintiff's Exhibit

24                         No. 17 was marked

25                         for identification.)

162

1    have to have a wall and eventually a shroud.

2        Q.    So you need, you need two vanes in

3    that to form the channel?

4        A.    The channel is between two vanes.

5        Q.    Two vanes.  Let's look at claim

6    sixteen, and tell me when you're finished

7    reading that.

8        A.    Okay.

9        Q.    Okay.  If you'll take a look at the

10   Johnson motor, after comprising, and we'll

11   look at the first element, it says a base

12   having a periphery that is adapted to be

13   sealed by the shroud, can you show us that

14   please?

15       A.    This is the base area that the shroud

16   stops against and the shroud is in contact in

17   proximity to this outer periphery.

18       Q.    Okay.  Then it says a shroud

19   extending from said periphery -- I'm sorry, a

20   shoulder extending from said periphery, can

21   you point out the shoulder extending from said

22   periphery?

23       A.    Okay.  Here's the shoulder extending

24   from said periphery.

25       Q.    Then it says a plurality of vanes

163

1  extending from said shoulder.

2      A.   Uh-huh.

3      Q.   Where is the plurality of vanes

4  extending from said shoulder?

5      A.   Well, you'd have a vane here and off

6  of the part, off this part of the shoulder

7  comes the other vane.

8      Q.   So show me one shoulder?

9      A.   Here's one shoulder.

10     Q.   Okay.  And there's more than one --

11     A.   I'm sorry, there's one vane, here's a

12  shoulder and you go around the shoulder and

13  here's the other vane.

14     Q.   So you have more than one vane

15  extending from a single shoulder?

16     A.   You have a periphery of vanes coming

17  around the --

18     Q.   And for any given shoulder you have

19  more than one vane extending therefrom?

20     A.   Yeah, I think you could say that.

21     Q.   Yes?

22     A.   Yes.

23          MR. WEISS:  Okay.  Give me a

24  minute, let's take a two minute break.

25               - - -



PLAINTIFF'S
EXHIBIT

12·6·04   13

Shewcross

# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Johnson Electric Industrial          )
Manufactory, Ltd. et al.             )
                                     )     Civil Action No: 3:03CV0098AVC
            Plaintiffs               )
      v.                             )
                                     )
Ametek, Inc.                         )
                                     )
            Defendant                )

## AFFIDAVIT OF JAMES P. SHAWCROSS

I, James P. Shawcross, being first duly sworn, do hereby depose and say:

1.     I am employed by Ametek, Inc. as Director of Application Engineering in its Motor Division.

2.     I have a Doctor of Science (DSc) Degree in Mechanical Engineering from Washington University in St. Louis, Missouri.

3.     For the past thirty (30) years, I have worked as a mechanical engineer, and my entire career has involved products requiring electric motors.

4.     Since 1993, I have been intimately involved in the design and development of electric motors for various uses, and particularly for use in the floorcare industry.

5.     I have carefully studied and am familiar with the accused U66 Motor Assembly of Johnson. I am also familiar with claim 1 of the '462 patent as construed by the Court and the parties. As I have testified in my earlier deposition, the U66 Motor Assembly satisfies the limitation of claim 1 of the '462 patent regarding the ramps, because the ramped surfaces and associated ramp walls of the U66 Motor Assembly have simply been combined into a single unitary ramp surface and a single unitary ramp wall. The difference between

# EXHIBIT B

the structure of the U66 Motor Assembly and that of the patent claim is that the motor has combined into a unitary piece what was previously two pieces. Otherwise, the ramped surfaces and ramp wall of the U66 Motor Assembly are the equivalent of those of the patent claim, performing the same function, in the same way, to achieve the same result.

6.     As I previously testified in my deposition, the outer-inner-outer limitation with regard to the vertical boundary of the ramps or sloping surface of claim 1 of the '462 patent is found in the U66 Motor Assembly. The vertical boundary of each ramp starts at the top of the ramp at the outer periphery, goes across the top of the ramp to the inner periphery in alignment with the fan, then follows the inner periphery back to the outer periphery at the bottom of the ramp. The outer-inner-outer structure of the ramp boundaries of claim 1 of the '462 patent is present in the U66 Motor Assembly.

7.     I am familiar with the Japanese '699 patent. This patent does not satisfy the limitations of claim 1 of the '462 patent for at least the reason that the fan 15 of the Japanese '699 patent extends with its peripheral opening 17 well beyond the ramped wall 29. There is no inner portion of the ramp in circumferential alignment with the outer periphery of the working air fan as required by the claim. It appears from Fig. 1 of the Japanese '699 patent that the peripheral opening 17 of the fan 15 is centered over the ramp 28, and the patent specification says nothing different. Additionally, the outlets 22 of the Japanese '699 patent are not in registration with the flow passages defined by the ramps 28. Fig. 1 of the patent shows the ramps 28 intersect the outlets 22, which is the antithesis of registration set forth in claim 1 of the '462 patent.

- 2 -

8. I am familiar with the '843 patent, and the Johnson U66 and U82 Motor Assemblies. Claim 1 of the '843 patent does not require that the vanes alone form a fan chamber, or that the vanes alone receive the fan. The claim states that the vanes serve to establish a chamber that receives the fan. That is the case in the U66 and U82 Motor Assemblies. The chamber receiving the fan extends beneath the fan and is formed by the vanes and ramps of the motor. The chamber defined by that entire region receives the fan.

9. The U66 and U82 Motor Assemblies are not made in accordance with the prior art Japanese '699 patent. As presented earlier in this Affidavit, the U66 Motor Assembly is not a reconstruction of the Japanese '699 patent and the same shortcomings pertain to the U82 Motor Assembly.

10. With regard to claim 16 of the '843 patent, the U66 and U82 Motor Assemblies both have a shoulder extending from the edge of the end bracket and vanes extending from the shoulder. The shoulders are the ramps of the motors, which define "an area around the edge of the higher part connecting it to a lower part," as I understand the parties have agreed on the definition of ramps. The vanes are simply the walls of the ramps or the "more than one blade" as agreed to by the parties. The claimed structure is clearly present in the U66 and U82 Motor Assemblies.

11. I have reviewed and am familiar with Ametek's patent 6,695,580. The Japanese '699 patent does not anticipate claim 1 of the '580 patent. The Japanese patent does not have channels that extend from an inner periphery in circumferential alignment with the outer periphery of the working air fan, toward an outer periphery of the end bracket, as required by claim 1 of the '580 patent. In the Japanese '699 patent, the fan 15

- 3 -

extends into the mid-section of the channels or passages 29, as clearly shown in Fig. 1 of that patent, and there is no presentation in the text of the patent that would suggest otherwise.

12.    While it is true that the Japanese '699 patent shows passages that are inclined that should therefore gradually get larger as they approach the outlets, the passages also slope outwardly toward the shroud, which would likely cause them to reduce in cross sectional size. It is not clear from the Japanese '699 patent whether the downward and outward components of the path of the channels are off-setting, or if there is a net expansion or contraction of the passage as a result.

13.    To the extent that it might be deemed that the '580 patent is invalid for obviousness-type double patenting, Ametek is willing to file a terminal disclaimer with the United States Patent Office, causing the '580 patent to expire on the same date of the '843 patent. It is my understanding that will naturally occur, in any event, because the '843 patent is the parent of the '580 patent.

Further, the Affiant sayeth naught.

_James P. Shawcross_
James P. Shawcross

County of Portage    )
                     )
State of Ohio        )

Sworn to and subscribed before me this _9th_ day of June, 2006.

_Melinda A. Hunter_

SEAL

Notary Public

MELINDA A. HUNTER, Notary Public
Residence - Portage County
Statewide Jurisdiction, Ohio
My Commission Expires 5-30-2011

- 4 -