UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Johnson Electric Industrial
Manufactory, Ltd. et al.                    )
                                            )
                                            )        Civil Action No: 303CV0098AVC
                    Plaintiffs              )
        v.                                  )
                                            )
Ametek, Inc.                                )
                                            )
                                            )
            Defendant                       )        June 12, 2006

**AMETEK, INC.'S BRIEF IN OPPOSITION TO JOHNSON ELECTRIC
INDUSTRIAL MANUFACTORY, LTD. AND JOHNSON ELECTRIC
NORTH AMERICA, INC.'S MOTION FOR SUMMARY JUDGMENT
WITH RESPECT TO AMETEK'S THROUGH-FLOW
CAUSES OF ACTION, AND REQUEST FOR ATTORNEY FEES
PURSUANT TO 35 U.S.C. § 285 AND 28 U.S.C. § 1927**

Attorney for Defendant
Ametek, Inc.

Ray L. Weber (CT 02148)
Renner, Kenner, Greive, Bobak, Taylor & Weber
Fourth Floor, First National Tower
Akron, Ohio 44308
Telephone: (330) 376-1242
Facsimile: (330) 376-9646
rlweber@rennerkenner.com

Attorney for Defendant
Ametek, Inc.

Ben A. Solnit (CT 00292)
Tyler, Cooper and Alcorn, LLP
205 Church Street
New Haven, CT 06510
Telephone: (203) 784-8205
Facsimile: (203) 777-1181
bsolnit@tylercooper.com

FILED
2006 JUN 12 P 4: 58
US DISTRICT COURT
HARTFORD CT

## TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I. PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

   A.    Legal Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

       1.    35 U.S.C. §285 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

       2.    28 U.S.C. §1997 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

   B.    Ametek Has Pursued its Meritorous Case in Good Faith and Has Not Multiplied the Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

       a.    The '180 Patent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

       b.    The '214 Patent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

   C.    The Foreign Patents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

   D.    Ametek Promptly Notified Johnson Following its Determination that Shawcross and Smith Would Not Be Offered as Experts . . . . . . . . . . . . . . . . . . . . . . 16

IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

i

TABLE OF AUTHORITIES

<u>Cases</u>

*Abbott Labs v. Tosoh Corp.*, 1998 WL 173297(N.D. Ill.) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Advance Transformer Co. v. Levinson*, 837 F.2d 1081 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . 11

*Brand Plastics Co. v. The Dow Chemical Co.*, (C.D. Cal. 1970),
*aff'd in part, rev'd in part*, 474 F.2d 124 (9th Cir. 1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Elsag Bailey (Canada), Inc. v. Trojan Technologies, Inc.*, 1996 WL 571156 (E.D. Pa.) . . . . . 12

*Machinery Corp. of America v. Gullfiber AB*, 774 F.2d 467 (Fed. Cir. 1985) . . . . . . . . . . . . 10

*Multi-Tech., Inc.v. Components, Inc.*, 708 F. Supp. 615 (D. Del. 1989) . . . . . . . . . . . . . . . . . 11

*Packard Instrument Co., Inc. v. Beckman Instruments, Inc.*, 346 F.Supp. 408 (N.D. Ill. 1972)   12

*Standard Oil Co. v. American Cyanamid Co.*, 774 F.2d 448 (Fed. Cir. 1985) . . . . . . . . . . . . . 11

*Stevenson v. Sears, Roebuck & Co.*, 713 F.2d 705 (Fed. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . 11

*Union National Bank of Youngstown v. Superior Steel Corp.*, 9 F.R.D. 117  (W.D. Pa. 1949) . 10

*W.L. Gore &.Assoc., Inc. v. Oak Materials Group, Inc.*, 424 F. Supp. 700 (D. Del. 1976) . . . 10

<u>Statutes</u>

28 U.S.C.§ 1997 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

35 U.S.C.§ 285 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Johnson Electric Industrial Manufactory, Ltd. et al. | ) ) | |
| Plaintiffs | ) ) | Civil Action No: 3:03CV0098AVC |
| v. | ) ) | |
| Ametek, Inc. | ) ) | |
| Defendant | ) ) | June 12, 2006 |

**AMETEK, INC.'S BRIEF IN OPPOSITION TO JOHNSON ELECTRIC INDUSTRIAL MANUFACTORY, LTD. AND JOHNSON ELECTRIC NORTH AMERICA, INC.'S MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO AMETEK'S THROUGH-FLOW CAUSES OF ACTION, AND REQUEST FOR ATTORNEY FEES PURSUANT TO 35 U.S.C. § 285 AND 28 U.S.C. § 1927**

Now comes Defendant, Ametek, Inc. ("Ametek"), in opposition to the Motion of Plaintiffs, Johnson Electrical Industrial Manufactory, Ltd. and Johnson Electric North American, Inc. (jointly "Johnson"), identified in the caption above. The Motion should be summarily denied for the reasons presented below.

## I. PLELIMINARY STATEMENT

This case was commenced as a declaratory judgment action, brought by Johnson and opposed by Ametek. Now, Johnson complains about the suit it brought.

This case involves two types of motors made and sold by Johnson. One type is referred to as a through-flow motor, and the other as a by-pass motor. As to the through-flow motors, the case involves a single Johnson motor that is charged with infringing Ametek's U.S. Patents 5,734,214 and 6,309,180. The through-flow motor is also the subject of a certain Patent License Agreement between Johnson and Ametek, dated July 30, 2001. (Weiss Aff., Exh. 3 to Johnson's Brief). Under the Patent License Agreement, Johnson received a license under the '214 and '180 patents, as well as at least six (6) foreign equivalents of the '214 patent to make and/or sell certain through-flow motors. In this action, Ametek asserts that Johnson has breached the Agreement. (Shawcross Aff., attached Ex. A, ¶6).

Notably, the U.S. and foreign patents regarding the through-flow motors are substantially identical. They all share the same specifications and drawings and, to the extent that they differ at all, they differ only with regard to their claims. They all address the same subject matter. Indeed, the '180 patent is a divisional of the '214 patent, and the six (6) foreign patents are simply foreign counterparts of the '214 patent. (Shawcross Aff., attached Ex. A,¶6).

As to the by-pass motors, this action involves two Johnson motors, Models U66 and U82. The action also involves three (3) United States patents owned by Ametek, patent Nos. 6,166,462 ("the '462 patent"), 6,439,843 ("the '843 patent"), and 6,695,580 ("the '580 patent"). The by-pass

2

motors at issue do not involve any foreign patents or license agreements. The by-pass motors are charged solely with patent infringement. (Shawcross Aff., attached Ex. A,¶7).

During the course of time that this action has proceeded, the market for through-flow motors has become less significant to Ametek, and the market for by-pass motors more significant. The case itself has become protracted by Johnson's attempt to improperly bring into the case issues regarding validity of the foreign patents that are the subject of the License Agreement - - notwithstanding the fact that a United States court has no jurisdiction to invalidate a foreign patent, nor does the Patent License Agreement provide any such authority. The case has further been complicated by multiple expert reports of Johnson, most of which are improper in the first instance by advancing the invalidity of foreign patents, and all of which are insufficient to satisfy the *Daubert* criteria. (Shawcross Aff., attached Ex. A,¶8).

Discovery in this case is over. The parties are now proceeding with dispositive motions, which will be subsequently followed by motions in limine, trial preparation, and trial. Upon evaluating the costs of further pursuing the through-flow motor claims against the value to be derived from a shrinking market, Ametek determined to withdraw its through-flow motor counts to simplify the case by limiting it to the by-pass motors, which involve only three (3) U.S. patents, no license agreement, and no foreign equivalents. (Shawcross Aff., attached Ex. A,¶8).

Ametek's withdrawl of the portion of the case directed to the through-flow motors was not motivated by any weakness in that portion of the case, but as a result of a cost versus reward assessment and a desire to simplify this jury case in order to focus on the market most adversely impacted by Johnson's infringing activities. (Shawcross Aff., attached Ex. A, ¶¶ 8, 10).

## II. STATEMENT OF FACTS

On or about July 30, 2001, Ametek and Johnson entered into a certain Patent License Agreement. (Weiss Aff., Ex. 3 to Johnson Brief). The License Agreement granted Johnson the right to make and sell certain through-flow motors under the '214 patent, divisionals thereof (the '180 patent) and foreign equivalents. (Weiss Aff., Ex. 3 to Johnson's Brief, ¶6b). The license was granted "until the expiration date of the last of Licensor Patent Rights and Licensor Foreign Patent Rights." (Weiss Aff., Ex. 3 to Johnson's Brief, ¶6a). A royalty was to be paid for the sale of each "Licensed Product." (Weiss Aff., Ex. 3 to Johnson's Brief, ¶3). A "Licensed Product" was defined as "[e]lectric motors covered by one or more of the patent claims of Licensor Patent Rights." (Weiss Aff., Ex. 3 to Johnson's Brief, ¶1(a)).

Notably, the Patent License Agreement contains no provision or right for invalidating or otherwise terminating any of the foreign patents - - although most countries, including Mexico,

4

China, Hong Kong, Germany, Italy and Croatia, at issue here, have specific provisions for such proceedings, typically referred to as cancellation or nullity proceedings, for terminating a patent as being invalid. (Weber Aff., attached Ex. B, ¶4).

At a point in time prior to this litigation, Johnson submitted a redesign of its through-flow motor to Ametek, asking Ametek's opinion as to whether the through-flow motor redesign was covered by the Patent License Agreement. Ametek asserted a belief that it was. The parties met to further discuss the matter, and Ametek continued in its belief that the redesign was covered by the patents of the Patent License Agreement. (Shawcross Aff., attached Ex. A, ¶9).

Immediately after the meeting, Johnson brought this declaratory judgment action, compelling Ametek to become embroiled in this litigation. Through its counterclaims and amendments thereto, Ametek has asserted breach of the Patent License Agreement and infringement of five (5) U.S. patents - - the two (2) also addressed in the Patent License Agreement as directed to the through-flow motors, and three (3) directed to by-pass motors. (See Complaint; Shawcross Aff., attached Ex. A, ¶9)

The issues confronting Ametek did not require much discovery. Patent infringement simply requires a comparison of the patent claims to the accused products. The same comparison would necessarily be made under ¶1(a) of the Patent License Agreement. Infringement could be proven at

5

trial by a comparison of the patent claims to the accused product, once the claims have been construed through the *Markman* proceedings. Ametek undertook the discovery it deemed necessary - interrogatories, document requests, and the deposition of Johnson's technical expert, its employee/consultant, Roger Baines. (Weber Aff., attached Ex. B, ¶5).

At the close of fact discovery, Ametek remained confident of this case and assessed the need for expert testimony. It determined that, to the extent it would employ expert testimony, it would use its own employees, Dr. James Shawcross and Roger Smith. Since these were not "retained" experts, no report was required of them under the Federal Rules of Civil Procedure. As is apparent from the documents herein, Ametek's counsel advised Johnson's counsel of the possible use of Shawcross and Smith in an expert capacity, and further advised Johnson's counsel that it was most likely that neither would be used as an expert witness, but only as a fact witness, since the factual proof would be sufficient to carry the day on the infringement and damages issues. Mr. Weiss was advised of this on several occasions and informed that as soon as a final determination was made, he would be informed. (Weber Aff., attached Ex. B, ¶6; Shawcross Aff., attached Ex. A,¶11; Weiss Aff., Ex. 24 to Johnson's Brief).

The schedules of Shawcross, Smith and their counsel were such that they were unable to confer regarding their possible expert testimony until the week before their scheduled depositions.

6

In undertaking deposition preparation, Ametek's counsel determined that the testimony to be adduced from both Shawcross and Smith was of a factual nature and, accordingly, they would not be presented as expert witnesses. The next business day after this determination was made, Mr. Weiss was informed, verifying what he had previously been told on several occasions would be the likely determination. (Weber Aff., attached Ex. B, ¶ 7; Shawcross Aff., attached Ex. A,¶11; Weiss Aff., Ex. 24 to Johnson's Brief).

At the close of fact discovery, Johnson submitted five (5) expert reports. (See Weiss Aff., Exs. 14-18 to Johnson's Brief). Three (3) of them, those of Straus, Clark and Reyes, all focused on foreign patent law, ostensibly dealing with the foreign patents subject to the License Agreement. The Straus and Clark Reports both focused significantly on issues of patent validity (sometimes couched as "practicing the prior art") in foreign countries.

Johnson also offered the report of John R. Thomas, an attorney practicing as a professor of law at Georgetown University. His report is nothing more than attorney argument, advancing conclusory opinions with minimal foundation or reasoning regarding the issues of the case, which would effectively be tantamount to Johnson's attorneys submitting their own briefs as reports. (See Weiss Aff., Ex. 14 to Johnson's Brief). Since his report was primarily directed to matters of law, it was not deemed necessary to depose him. (Weber Aff., attached Ex. B, ¶9) (Weiss Aff., Ex. 24

7

to Johnson's Brief). Challenges to the Thomas Report are anticipated as a motion in limine with regard to the by-pass motors.

Johnson also submitted the Baines Report, the report of a former employee and present consultant of Johnson, which presents conclusory opinions, again with minimal foundation or reasoning regarding the issues of the case. (See Weiss Aff., Ex. 18 to Johnson's Brief). Since his Report addressed infringement and invalidity regarding the by-pass motor patents and products, and particularly since he was a former Johnson employee and present consultant, Ametek decided to depose him. (Weber Aff., attached Ex. B, ¶10) (Weiss Aff., Ex. 24 to Johnson's Brief). Again, this report will be the subject of a motion in limine.

Clearly, the Straus, Clark and Reyes reports raised issues pertaining to foreign law and the validity of foreign patents. Ametek does not believe that is an issue within the jurisdiction of this Court, and those reports set the stage for proceedings before the Court regarding the issues that it could properly entertain. Notably, the Court has no jurisdiction over foreign patents, nor did the parties agree to any such jurisdiction through the Patent License Agreement. In any event, Ametek viewed the issue as requiring extensive motion practice and briefing, addressing, in the first instance, the lack of jurisdiction of this Court to entertain such issues, particularly since the Patent License Agreement, by its own terms, continues until the expiration date of the last of the U.S. or foreign

8

patents subject to the License Agreement (¶6(a), and this Court has no jurisdiction to cause any foreign patent to expire. (Weber Aff., attached Ex. B,¶8).

Upon the close of discovery. Ametek gave consideration to the complexity of the case for trial. The case would involve five (5) U.S. patents, six (6) foreign patents, and a complex Patent License Agreement, along with three separate models of Johnson motors. It was viewed as more than a jury could handle. Additionally, the through-flow motor market was becoming less significant to Ametek. Accordingly, a decision was made to simplify the case by removing all six (6) of the foreign patents, the License Agreement, both of the through-flow motor patents, and the through-flow motor itself, limiting the case to the by-pass motors and three (3) U.S. patents. Such not only would simplify the case for trial, but eliminate the need for *Daubert* challenges to three of the expert reports, although the remaining two will receive such challenges. (Shawcross Aff., attached Ex. A.,¶¶ 8, 10, 12; Weber Aff., attached Ex. B, ¶11).

9

# III. ARGUMENT

**A.    Legal Standards**

**1.    35 U.S.C. §285**

Under the provisions of the patent statutes, and particularly 35 U.S.C. §285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." This statutory provision for awarding attorney fees in patent cases is normally invoked only at the end of the litigation. *Brand Plastics Co. v. The Dow Chemical Co.*, 267 F.Supp. 1010 (C.D. Cal. 1970), *aff'd in part, rev'd in part* 474 F.2d 124 (9th Cir. 1973). It is clear that Congress intended that §285 be used sparingly. *Union National Bank of Youngstown v. Superior Steel Corp*, 9 F.R.D. 117, 121 n2 (W.D. Pa. 1949). The case must be proven to be exceptional by clear and convincing evidence, and only then may the district court exercise its discretion of granting reasonable fees to the prevailing party. *Machinery Corp. of America v. Gullfiber AB*, 774 F.2d 467, 470-71 (Fed. Cir. 1985). Before awarding attorney fees, the Court must conclude that it would be a "gross injustice" not to do so. *Abbott Labs v. Tosoh Corp.*, 1998 WL 173297(N.D. Ill.) at *7. As a general rule, only when the case is totally devoid of substance will the court award such fees. See *W.L. Gore &Assoc., Inc. v. Oak Materials Group, Inc.*, 454 F. Supp. 700, 704 (D. Del. 1976). In sum, absent clear and convincing evidence of the lack of a good faith belief in the case advanced by a party, is a finding of exceptional

10

case proper. The "successful defendant in a patent infringement suit seeking to recover fees must demonstrate that there is evidence of actual wrongful intent or of gross negligence on the part of the plaintiff in bringing the action." *Multi-Tech., Inc. v. Components, Inc.*, 708 F. Supp. 615, 620 (D. Del. 1989). In the absence of clear and convincing evidence of "misconduct during the litigation, vexatious or unjustified litigation or some similar exceptional circumstances, the case cannot be deemed exceptional. See *Advance Transformer Co. v. Levinson*, 837 F.2d 1081, 1085 (Fed. Cir. 1988); *Standard Oil Co. v. American Cyanamid Co.*, 774 F.2d 448, 455 (Fed. Cir. 1985); *Stevenson v. Sears, Roebuck & Co.*, 713 F.2d, 705, 713 (Fed. Cir. 1983).

    **2.**    **28 U.S.C. § 1997**

While 28 U.S.C. § 1997 provides that excess costs, expenses and attorneys fees may be required of an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously," there is little case law regarding the statutory provision.

**B.**    **Ametek Has Pursued its Meritorous Case in Good Faith and Has Not Multiplied the Proceedings**

This case was initiated by Johnson, not Ametek. Ametek was hopeful that an amicable resolution could be reached under the terms of the Patent License Agreement. Ametek did not put the foreign patents in issue, nor the Patent License Agreement, nor the '214 and '180 patents directed

11

to the through-flow motor. All of these issues were brought to the fore by Johnson's commencement of the litigation following a meeting between the parties.

Indeed, it is Ametek who has walked away from meritorious claims to simplify the case for trial and to limit the costs incident to protracted *Daubert* challenges and motions in limine necessitated by Johnson's service of multiple expert reports addressing issues over which this Court has no jurisdiction, whether at law or by the terms of the Patent License Agreement. Simply put, Federal Courts have no jurisdiction to determine the validity of foreign patents. See *Elsag Bailey (Canada), Inc. v. Trojan Technologies, Inc.*, 1996 WL 571156 (E.D. Pa.) *1; *Packard Instrument Co., Inc. v. Beckman Instruments, Inc.*, 346 F.Supp. 408, 409 (N.D. Ill. 1972).

Moreover, absent its defenses of invalidity, which should be brought, if at all, though nullity proceedings in China and/or Hong Kong, it is abundantly clear that the accused through-flow motors of Johnson infringe the Chinese and Hong Kong patents, for no defense to the contrary has been advanced.

### 1.     The '180 Patent

Throughout, Johnson loses sight of the fact that the *Markman* ruling, construing the patent claims in this case, did not issue until August 24, 2005. With respect to the terms in issue regarding the '180 patent, the Court found only a "partial disavowal of claim scope" by Ametek. (See Ruling

12

on Claim Construction For '180 and '843 Patents, p. 25).

The expert reports of Baines and Thomas also misstate the record. Before the Patent Office, the statement was made that "[i]t is believed that the turbulence generated by the corners reduces the efficiency of the motor and makes it noisier." (Amendment/Argument in '180 patent proceedings, Attached Ex. C, p.3). Subsequently, it was found that the portion of the walls extending beyond the flange played a minimal part in the passage of air - - a position taken by Ametek in this litigation. In any event, the patent claim was not allowed on the basis of efficiency or noise of the motor, but on the basis of the structure that differentiated from the Havens prior art. Indeed, Ametek has subsequently determined that, in its own motor, the portion of the walls that extend beyond the flange play little if any part in the intended function of the motor. Such is totally consistent with Ametek's answers to the interrogatories. (Shawcross Aff., attached Ex. A, ¶13).

## 2.     The '214 Patent

Here again, Johnson contorts the record and ignores the history of the parties. The Johnson through-flow motor at issue has substantially the same ramp structure as the through-flow motors for which Johnson paid royalties under the Patent License Agreement for a number of years preceding this litigation. (Shawcross Aff., attached Ex. A, ¶9). It is incongruous that Johnson should now contend that this ramp structure, for which it paid royalties for several years, is outside the scope

13

of the licensed '214 patent.

It is also noteworthy that original claim 1 of the '214 patent, presented in the Thomas Report (p. 4), described the diffuser in a means-plus-function format under 35 U.S.C.§ 112. ¶6. It was described as "diffuser means affixed to said housing means for directing the flow of air from the fan member over the motor." As a consequence, the claimed "diffuser means" would be properly construed to include all of the structure presented in the patent specification and drawings that was necessary to perform the function of "directing the flow of air from the fan member over the motor." See 35 U.S.C.§ 112, ¶6. Subsequently, claim 1 was modified for purposes of clarification to specifically claim this structure rather than in a means-plus-function format. (Thomas Report, pp. 4-5). In any event, the amendment to claim 1 regarding the diffuser or diffuser plate was to matters of form, not substance, for all of the structure in patent claim 1 regarding the diffuser plate was, by the requirements of 35 U.S.C.§ 112, ¶6, included in the "diffuser means" in original claim 1. Accordingly, prosecution history estoppel should not pertain, and Ametek should be allowed equivalents regarding that claim limitation. It is significant that Johnson treated motors having these same ramp surfaces as falling under the '214 patent by paying royalties thereon for several years prior to this litigation, and now asserts them in support of a bad faith litigation charge. (Shawcross Aff., attached Ex. A, ¶9).

14

## C.    The Foreign Patents

As presented above, Johnson seeks to have this Court declare the Chinese and Hong Kong patents as invalid, and to do the same with the German, Italian and Croatian patents, although it seeks to couch its arguments slightly differently.  Any review of the Thomas Report, (Weiss Aff., Ex. 14 to Johnson's Brief) makes it clear that such is the result sought.  As Thomas states, "patents should not cover technology that already existed within the state of the art," (p. 7) and that patents should be issued only on inventions that are new and unobvious (p. 8), the equivalent of 35 U.S.C.§ 102 and §103.  Simply stated, Thomas advances that "[n]o patent system of which I am aware - including those of relevant jurisdictions in this case - would award a patent on the prior art."  Thomas simply asserts the invalidity of the claims of the German, Italian and Croatian patents.  But, the place for that determination is not this Court, for it lacks jurisdiction to do so.  Johnson had every opportunity to bring the appropriate action in the proper forums of China, Hong Kong, Germany, Italy and Croatia.  It did not. (Weber Aff., attached Ex. B, ¶¶4,8).  Instead, it terminated its payment of royalties on the products, despite the fact that its only acknowledged defense to infringement in two of the countries (China and Hong Kong) was the validity of the patents.  Even in the other countries of Germany, Italy and Croatia, it argues invalidity.

Only with regard to Mexico, does Johnson advance a meritorious defense.  While it is true

15

that Mexico does not presently have a doctrine of equivalents in its patent law, counsel for Ametek has understood that, for a number of years, Mexico has entertained the addition of a doctrine of equivalents to be consistent with most other countries, including Germany, Italy and Croatia. Indeed, NAFTA has accelerated those considerations and there was every likelihood that by the end of this litigation Mexico would adopt a doctrine of equivalents. (Weber Aff., attached Ex. B, ¶12).

**D.     Ametek Promptly Notified Johnson Following its Determination that Shawcross and Smith Would Not Be Offered as Experts**

As presented above, when Dr. Shawcross and Mr. Smith were designated as experts in this case, Johnson was advised that the designation was made out of an abundance of caution, and that it was likely that neither would testify as an expert, but as a fact witness. In order that a deposition date would be available in the event that they would be offered as experts, the parties agreed upon February 15 and 16 as that date. Mr. Weiss was advised that it was most likely that the two would not be used as experts, and that once the determination was made, he would be informed. He was repeatedly advised that Dr. Shawcross' testimony would likely be substantially along the lines of his earlier deposition. In any event, the business day following the determination that neither would be used as an expert, Mr. Weiss was notified. The fact that it came close to the scheduled date for the deposition was simply a result of the fact that the dates for the deposition had been set with regard

16

to the availability of the two witnesses, both of whom travel extensively out of the country. Ametek's counsel conferred with them as soon as their mutual schedules accommodated, and immediately advised Mr. Weiss that they would not be used. (Weber Aff., attached Ex. B, ¶7).

## IV. CONCLUSION

Ametek has proceeded in good faith in defending this declaratory judgment action. The patents involved regarding the through-flow motors that are the subject of Ametek's voluntary dismissal in this case were all the subject of a license to Johnson, under which Johnson paid royalties for several years. Ametek is of the belief that Johnson should continue to pay royalties on its present through-flow motor design.

However, the shrinking market for through-flow motors and the complexity and associated costs of time and effort to further pursue the through-flow motors in this litigation is not warranted. Despite the fact that its positions in the through-flow motor case are meritorious, it made a case management decision to limit the case at trial to the by-pass motors in order to streamline the case and better focus the jury's attention. Ametek has done nothing more than what any patent litigant does - - assess the case along the way and pare it to as appropriate, state conducive to good trial presentation. Ametek's efforts here have reduced the issues for all of the parties and should streamline the case for trial. Such is certainly not an indication of any malfeasance on the part of

17

Ametek or its counsel.


Ray L. Weber   (CT 02148)
Renner, Kenner, Greive, Bobak,
        Taylor & Weber
Fourth Floor, First National Tower
Akron, Ohio 44308
Telephone:  (330) 376-1242
Facsimile: (330) 376-9646

Ben A. Solnit (CT 00292)
Tyler, Cooper and Alcorn, LLP
205 Church Street
New Haven, CT 06510
Telephone:  (203) 784-8205
Facsimile:  (203) 777-1181


Attorneys for Defendant
Ametek, Inc.


18

## CERTIFICATE OF SERVICE

A true copy of the foregoing **AMETEK, INC.'S BRIEF IN OPPOSITION TO JOHNSON ELECTRIC INDUSTRIAL MANUFACTORY, LTD. AND JOHNSON ELECTRIC NORTH AMERICA INC.'S MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO AMETEK'S THROUGH-FLOW CAUSES OF ACTION, AND REQUEST FOR ATTORNEY FEES PURSUANT TO 35 U.S.C. § 285 AND 28 U.S.C. § 1927** filed and served via first class mail, postage prepaid upon the following this 12th day of June, 2006.

Edmund J. Ferdinand, III, Esq.          (First-Class Mail)
Grimes & Battersby, LLP
488 Main Ave., Third Floor
Norwalk, CT 06851

Stephen N. Weiss, Esq.                  (Overnight Mail)
Gregory J. Fleesler, Esq.
Moses & Singer LLP
1301 Avenue of the Americas
New York, NY 10019

Ben A. Solnit (CT 00292)

19