UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-------------------------------------------------x
                                                 :
                                                 :
JOHNSON ELECTRIC INDUSTRIAL                      :
MANUFACTORY, LTD. and JOHNSON                    :
ELECTRIC NORTH AMERICA, INC.,                    :     CASE NO. 03CV0098AVC
                                                 :
                    Plaintiffs,                  :
                                                 :
                                                 :
          -against-                              :
                                                 :
AMETEK, INC.,                                    :
                                                 :
                                                 :
                    Defendant.                   :
                                                 :
-------------------------------------------------x
```

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOHNSON ELECTRIC INDUSTRIAL MANUFACTORY, LTD. AND JOHNSON ELECTRIC NORTH AMERICA, INC.'S MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO AMETEK'S THROUGH-FLOW CAUSES OF ACTION, AND REQUEST FOR ATTORNEY FEES PURSUANT TO 35 U.S.C. § 285 AND 28 U.S.C. § 1927**

Stephen Norman Weiss
(CT Fed. Bar No. CT 12717)
Gregory J. Fleesler
(CT Fed. Bar No. CT 24491)
MOSES & SINGER, LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Tel.: (212) 554-7800
Fax: (212) 554-7700

*Attorneys for
Plaintiffs/Counterclaim
Defendants Johnson Electric
Industrial Manufactory, Ltd.
and Johnson Electric North
America, Inc.*

527370  007171.0103

## I.    PRELIMINARY STATEMENT

Johnson Electric Industrial Manufactory, Ltd. and Johnson Electric North America, Inc. (collectively, "Johnson") submit this Reply in further support of their Motion for Summary Judgment With Respect to Ametek's Through-Flow Causes of Action, and Request for Attorney Fees Pursuant to 35 U.S.C. § 285 and 28 U.S.C. § 1927 (the "Johnson Through-Flow Motion"). Many of the points raised by Ametek in its opposition brief ("Ametek Opp. Brief") were thoroughly addressed in Johnson's brief in support of its Through-Flow Motion ("Johnson Moving Brief"), and are repeated herein only for amplification.

This Reply is supported by the instant Memorandum of Points and Authorities; the supporting Reply Affidavit of Stephen N. Weiss ("Weiss Reply Aff."); and the exhibits attached thereto.

Johnson established, in its Through-Flow Motion, its entitlement to attorney fees pursuant to 35 U.S.C. § 285 and/or 28 U.S.C. § 1927. In this Reply, Johnson highlights the misstatements and mischaracterizations advanced by Ametek in its Opposition, and further explains why Johnson is entitled to the requested relief.

## II.    ARGUMENT

### A.    Ametek is Responsible for the Scope of This Litigation

#### 1.    Ametek's Allegations Put in Issue 12 Patents in 11 Countries

Ametek's assertion in its Opposition that it "did not put the foreign patents in issue, nor the Patent License Agreement, nor the '214 and '180 patents directed to the

527370  007171.0103

through-flow motor" (Ametek Opp. Brief, at pp. 11-12) directly contradicts Ametek's conduct throughout this litigation.

Johnson commenced this action seeking, among other things, a declaration that Johnson's motors are not subject to royalty payments on worldwide Ametek patents identified in the parties' July 30, 2001 Patent License Agreement (Exhibit 3 to the Affidavit of Stephen N. Weiss in support of the Johnson Through-Flow Motion ("Weiss Moving Aff.").

In response, Ametek advanced several counterclaims, including causes of action for breach of the Patent License Agreement, and for infringement of U.S. Patent Nos. 5,734,214 (the "'214 patent") and 6,309,180 (the "'180 patent"). (*See,* Weiss Moving Aff., at Exh. 4 (Ametek's August 15, 2003 Answer, Affirmative Defenses and Counterclaims), at ¶¶ 21-24, 29-36; *id.,* at Exh. 6 (Ametek's September 14, 2004 First Amended Counterclaims), at ¶¶ 22-25, 32-35, 38-41.)  In the parties' September 12, 2003 Report memorializing the planning conference (the "Rule 16 Report") (attached to the Weiss Reply Aff. as Exhibit 1), Ametek represented that "**[t]he patents in issue** that are the subject of [the parties' July 30, 2001 Patent License Agreement] are [the '214 patent] and [the '180 patent], and **corresponding patents or patent applications in Canada, the Peoples' Republic of China, Hong Kong, Croatia, Slovenia, Germany, Italy, India, Japan and Mexico.**"  (Weiss Reply Aff., at Exh. 1 (Rule 16 Report), at p. 4 (emphasis added).)  Johnson did not author that statement; Ametek did.

### 2.    Ametek Forced Extensive Worldwide Discovery

In an attempt to downplay its role in this litigation, Ametek disingenuously asserts, in complete disregard of the record, that "[t]he issues confronting Ametek did not require much discovery." (Ametek Opp. Brief, at p. 5.) Ametek's conduct speaks for itself, and says otherwise.

*First*, Ametek stated in the Rule 16 Report that discovery was required on, among other things:

1.    "Interpretation of the foreign corresponding patents covered by the July 30, 2001 contract for Canada, People's Republic of China, Hong Kong, Croatia, Slovenia, Germany, India, Italy, Japan and Mexico;"

2.    "Applicable foreign law and interpretation of same for Canada, People's Republic of China, Hong Kong, Croatia, Slovenia, Germany, India, Italy, Japan and Mexico;"

3.    "Whether the Johnson *through-flow* motors infringe the '214 patent, the '180 patent, or any of the foreign corresponding patents;" and

4.    "The validity and/or enforceability of the '214 patent, the '180 patent, and the foreign corresponding patents."

(Weiss Reply Aff., at Exh. 1 (Rule 16 Report), at pp. 7-8 (Sections V(E)(1)(c), (d), (f), and (g), respectively).)

*Second*, from 2003 through 2005, Ametek served twenty-six (26) document requests and thirteen (13) interrogatories relating to its international through-flow patents and/or Johnson's worldwide through-flow motors. (*See, e.g.,* Ametek's First Set of

Requests For Documents and Things dated September 30, 2003 (attached to the Weiss

Reply Aff. as Exhibit 2), at pp. 5-16 (Request Nos. 2, 4, 6, 8, 12, 14, 16, 18, 20, 22, 24,

26, 28, 30, 35, 39); Ametek's Second Set of Requests for Documents and Things dated

September 29, 2005 (attached to the Weiss Reply Aff. as Exhibit 3), at pp. 3-6 (Request

Nos. 42-47, 53, 54, 56, 58, 60); Ametek's First Set of Interrogatories dated September 30,

2003 (attached to the Weiss Reply Aff. as Exhibit 4), at p. 3, Interrogatory Nos. 1, 2;

Ametek's Second Set of Interrogatories dated September 29, 2005 (attached to the Weiss

Reply Aff. as Exhibit 5), at pp. 3-4, Interrogatory Nos. 5, 10, 12, 13-15, 18-21, 23.)

*Third*, as recently as November 28, 2005, Ametek continued to seek updates and

supplements to this international discovery. Ametek's counsel's November 28 letter

(attached to the Weiss Reply Aff. as Exhibit 6) specifically requests an "update and

supplementation" regarding, "by way of example," document requests 22, 23, 30, and 31.

(*Id.*)  Requests 22 and 30 demand broad documentation of Johnson's worldwide through-

flow motor sales. (*See,* Weiss Reply Aff., at Exh. 2, at pp. 13-14.)

Plainly, Ametek's conduct throughout this action, including its own statements to

this Court in the Rule 16 Report, put the lie to the arguments in Ametek's Opposition.

**B.    Ametek Misrepresents the Allegations Regarding the Foreign Patents**

Throughout its Opposition, Ametek writes that Johnson had sought, in this

litigation, judgments of invalidity of foreign patents. (*See, e.g.,* Ametek Opp. Brief, at p.

15 ("Johnson seeks to have this Court declare the Chinese and Hong Kong patents as

invalid, and to do the same with the German, Italian and Croatian patents.").)  That is

false. Johnson asked this Court to declare that Johnson did not owe royalties under a

Patent License Agreement (executed in the United States and governed by New York law) that provided for worldwide payments. *(See,* Johnson's complaint (attached to the Weiss Reply Aff. as Exhibit 7, without exhibits), at p. 6 (¶ 19), and at p. 8 (¶ (C)).) According to the Agreement, royalties were due on sales of Johnson motors covered by the foreign patent claims asserted by Ametek. (Weiss Moving Aff., at Exh. 3 (the Patent License Agreement), at pp. 1-2 (¶¶ 1(a), 1(b)(3)).) Only for the purpose of determining whether royalties were due did this Court need to address whether the foreign claims asserted by Ametek were valid. **This had absolutely no impact whatsoever on the validity of any those patents in their issuing countries**, and prior to Ametek's Opposition no party has ever contended otherwise.

In any event, this is a non-issue. Ametek has, throughout this litigation, acknowledged this Court's authority to adjudicate issues relating to the validity of its foreign patents within the context of the Patent License Agreement. *(See, e.g.,* the Rule 16 Report (Weiss Reply Aff., at Exh. 1), at p. 8, Section V(E)(g) (stating the need for discovery regarding "[t]he validity ... of ... the foreign corresponding patents"); Ametek's First Set of Requests for Documents and Things dated September 30, 2003 (Weiss Reply Aff., at Exh. 2), at pp. 10-11 (Request No. 14) (seeking documents and things relating to, among other things, the "validity ... of any claim of" the foreign corresponding patents).) Indeed, in 2004 Ametek agreed that a discovery deadline should be extended because, among other things, "the litigation concerns a multi-national license agreement, involving ... corresponding patents in China, Hong Kong, Mexico, Germany, Italy and Croatia" *(See,* the August 11, 2004 Stipulation and Proposed Order to Resolve Discovery Dispute, Permit Defendant to File Amended Counterclaims, and to Modify

Scheduling Order (attached to the Weiss Reply Aff. as Exhibit 8), at ¶ 1)), and in light of "the number of U.S. and foreign patents involved in ... this case". (*Id.*, at ¶ 6.)

Ametek stated, at the outset of discovery almost three years ago (i.e., in the Rule 16 Report), that this case involved foreign patents and foreign law. Ametek forced Johnson to prepare a worldwide defense against these claims, and to incur seven-figure fees. Only after the fact, in the face of this motion, does Ametek raise the argument that this Court lacks jurisdiction to adjudicate the claims at issue. This egregious conduct underscores Johnson's entitlement to attorney fees under 35 U.S.C. § 285 and/or 28 U.S.C. § 1927.

### C.     Ametek Admits That its Allegations Regarding the Mexican Patent Were Baseless

Not only did Ametek assert seventy-three patent claims, spanning a total of eight patents, coming out of seven separate countries, and force Johnson to mount an international defense for almost three years, Ametek now admits that its allegations regarding Mexican Patent No. 199343 (the "Mexican Patent") were baseless from the start. Exemplary of the exceptional nature of this case is Ametek's admission that, from the time it first asserted its allegations of infringement of the Mexican Patent through the present, those allegations had no basis in law. (*See,* Ametek Opp. Brief, at pp. 15-16 ("[I]t is true that Mexico does not presently have a doctrine of equivalents in its patent law").) Thus, notwithstanding its assertions of equivalent infringement of the Mexican Patent: (1) in signed infringement contentions (Weiss Moving Aff. Exh. 9 (Ametek's Answers to Johnson's First Set of Interrogatories), at pp. 11-14); (2) through deposition

527370  007171.0103                                                                                      6

testimony (*Id.*, at Exh. 20 (excerpted pages from the transcript of the December 6, 2004

deposition of Ametek's James P. Shawcross), at pp. 4:10-8:14); and (3) while fully aware

that Johnson intended to and did procure experts in foreign patent law (*see, e.g., id.*, at

Exh. 17 (the expert report of Arturo Reyes), *passim*), Ametek's patent counsel admits that

he was "aware that Mexico does not have a formal doctrine of equivalents with regard to

patent infringement," although he has "understood for quite a number of years that

Mexico was likely to adopt that doctrine." (Affidavit of Ametek's counsel Ray Weber

(Ametek Opp. Brief Exh. B), at ¶ 12.) It is unfathomable that Ametek would advance

this international patent litigation without ensuring that each of its allegations were well

grounded in **existing** law. That failure alone justifies an award to Johnson of its attorney

fees under 35 U.S.C. § 285 and/or 28 U.S.C. § 1927.


**D.    Ametek's Explanations for its Decision to Terminate the Through-Flow Causes of Action Are Implausible on Their Face**

In a last-ditch effort to avoid an award of fees under 35 U.S.C. § 285 and/or 28

U.S.C. § 1927:

1.    Ametek asserts that it decided to abandon its through-flow causes of

action (after Johnson expended enormous amounts of time and money to defend against

them) because "the through-flow motor market was becoming less significant to

Ametek." (Ametek Opp. Brief, at p. 9.) That makes no sense. The relevance of the

through-flow market to Ametek has no impact on Ametek's claim for royalties based on

**Johnson's** sales of the accused products. If anything, if it is true that Ametek has ceded

through-flow market share to Johnson, and that the motors Johnson is selling are infringements,[1] this could only increase Ametek's damages in this case; and

       2.     Ametek claims that after the '180 patent issued, it realized that the position it had taken during the prosecution of the '180 patent was not correct.  (*See,* Ametek Opp. Brief, at p. 13 (*citing* the Shawcross Affidavit (Exhibit A to the Ametek Opp. Brief), at ¶ 13.)  This is a convenient but indefensible attempt to justify the advancement of infringement contentions that completely contradict Ametek's arguments during patent prosecution.  (*See,* the Johnson Through-Flow Brief, at pp. 8-9.)  Not surprisingly, Ametek offers nothing but conclusory statements regarding its epiphany; there is absolutely no documentary evidence of this litigation-manufactured excuse.  (*See,* Ametek Opp. Brief, at Exh. A (Shawcross Affidavit), at ¶ 13 (failing to attach or even reference evidentiary support for the statements contained therein).)

---

[1]  None of which is conceded by Johnson.

## III.    CONCLUSION

In accordance with the foregoing, Johnson respectfully requests that attorney fees

be awarded under 35 U.S.C. § 285 and/or 28 U.S.C. § 1927.


Dated: July 6, 2006
New York, New York

Respectfully submitted,

Stephen Norman Weiss
(CT Fed. Bar No. CT 12717)
Gregory J. Fleesler
(CT Fed. Bar No. CT 24491)
MOSES & SINGER, LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Tel.: (212) 554-7800
Fax: (212) 554-7700

Edmund J. Ferdinand, III
(CT Fed. Bar. No. CT 21287)
GRIMES & BATTERSBY, LLP
488 Main Street  3rd floor
Norwalk, CT  06851
Tel.: (203) 849-8300
Fax: (203) 849-9300

*Attorneys for Plaintiffs/Counterclaim
Defendants Johnson Electric Industrial
Manufactory, Ltd. and Johnson Electric
North America, Inc.*