**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
JOHNSON ELECTRIC INDUSTRIAL    :
MANUFACTURING, LTD. and        :
JOHNSON ELECTRIC NORTH         :
AMERICA, INC.                  :
   Plaintiffs,                 :
                               :   Civil No. 3:03CV0098 (AVC)
v.                             :
                               :
AMETEK, INC.,                  :
   Defendants.                 :
```

**RULING ON THE PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT**

This is an action for damages and equitable relief, brought pursuant to 35 U.S.C. §§ 271 and 281 and common law precepts concerning patent law. The plaintiffs, Johnson Electric Industrial Manufacturing, Ltd. and Johnson Electric North America, Inc. (collectively "Johnson") seek a declaratory judgment of noninfringement and invalidity regarding patents owned by the defendant, Ametek, Inc. ("Ametek"). Specifically, the patents at issue here are United States Patent No. 6,166,462 (the "'462 patent"), United States Patent No. 6,439,843 (the "'843 patent") and United States Patent No. 6,695,580 (the "'580 patent").

Johnson has now filed the within motion (document no. 60) arguing that it is entitled to summary judgment that: (1) the Johnson U66 Motor Assembly ("U66") does not infringe any asserted claim of the '462 patent; (2) neither the U66 nor the Johnson U82 Motor Assembly ("U82") literally or equivalently infringes any asserted claim of the '843 patent; and (3) claims 1 and 2 of the

'580 patent are invalid.

For the reasons hereinafter set forth, the court concludes that: (1) the U66 does not infringe any asserted claim of the '462 patent; (2) neither the U66 nor the U82 infringe any asserted claim of the '843 patent; and (3) claims 1 and 2 of the '580 patent are invalid.  The motion for summary judgment therefore is GRANTED.

## **FACTS**

Examination of the pleadings, the motions for summary judgment, the memoranda in support thereof, the responses and the attachments thereto, the Local Rule 65(a) statements, and the patent records disclose the following undisputed, material facts.

For some time now, Johnson and Ametek have been "significant players in the worldwide market for vacuum cleaner motors."  In this regard, Ametek is the owner of the '462 patent for a "bypass motor/fan assembly having separate working air passages", the '843 patent for a "motor/fan assembly a radial diffuser bypass" and the '580 patent, a continuation of the '843 patent for a "motor/fan assembly having a radial diffuser bypass."  Johnson manufactures and sells two bypass motors, namely the U66 and the U82.

On August 15, 2003, the complaint alleges that Ametek personnel told Johnson personnel that they were "convinced . . . the [U66 and the U82] are infringements."

2

Thereafter, on January 13, 2003, anticipating that Ametek "intended to judicially enforce [its] patent rights in the '843 and '462 patents", Johnson brought the instant action seeking "declarations that Johnson has not infringed . . . any valid claim of the '462 and/or '843 patents."

On August 15, 2003, Ametek brought counterclaims seeking declarations that Johnson has "infringed claims of the '462 and '843 patents" and the awarding of damages "resulting from such infringement."

On February 24, 2005, the parties submitted a joint claim construction brief. On June 14, a hearing was held and on August 24, 2005, the court issued a ruling on claim construction for the '180 and '843 patents.

On April 28, 2006, Johnson filed the within motion "seek[ing] summary adjudication that its U66 and U82 Motor Assemblies do not infringe any asserted claim of the '462 or '843 patents, and that each asserted claim of the '580 patent is invalid."

## STANDARD

Summary judgment is appropriately granted in patent cases, as in other cases, when the evidentiary record shows that there are no genuine issues of material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); see also C.R. Bard, Inc. v. Advanced Cardiovascular Sys.,

<u>Inc.</u>, 911 F.2d 670, 672 (Fed. Cir. 1990).  In determining whether the record presents genuine issues for trial, the court must view all inferences and ambiguities in a light most favorable to the non-moving party.  <u>See</u> <u>Bryant v. Maffacci</u>, 923 F.2d 979, 982 (2d Cir. 1991).  A plaintiff raises a genuine issues of material fact if "the jury could reasonably find for the plaintiff."  <u>Anderson</u> <u>v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986).  Rule 56(c) "provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is not a genuine issue of material fact."  <u>Id</u>. at 247-48 (construing Fed. R. Civ. P. 56 (c)).

In opposing a motion for summary judgment, the "adverse party may not rest upon the mere allegations or denial of [its] pleading," but must "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56; <u>see</u> <u>D'Amico</u> <u>v. City of New York</u>, 132 F.3d 145, 149 (2d Cir. 1998).  "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."  Fed. R. Civ. P. 56(d).  "The mere verification by affidavit of one's own conclusory allegations is not sufficient to oppose a motion for summary judgment."  <u>Zigmund v. Foster</u>, 106 F.Supp.2d 352, 356 (D. Conn. 2000).  Furthermore, "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will

4

be insufficient [to avoid the entry of judgment against the non-moving party]; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson v. Liberty, Inc., 477 U.S. 242, 248 (1986).

**DISCUSSION**

1.    The '462 Patent

Johnson argues that it is entitled to summary judgment that the U66 does not infringe any asserted claim of the '462 patent. Specifically, Johnson asserts that the U66 does not literally infringe claim 1 of the '462 patent and furthermore that Ametek is estopped from arguing that the U66 infringes on claim 1 of the '462 patent under the doctrine of equivalents.

Ametek responds that the U66 literally infringes on its '462 patent.

A.    Literal Infringement

Johnson first argues that the U66 does not literally infringe claim 1 of the '462 patent. Specifically, Johnson maintains that unlike claim 1 of the '462 patent which "requires a 'first ramped surface' and a 'second ramped surface' and further requires that these surfaces have associated ramp walls that align and form an 'outer-inner-outer' configuration," the "U66 Motor Assembly does not have two ramped surfaces . . . [and] the ramp walls of the U66 [] run from an inner boundary to an outer boundary."

5

In response, Ametek contends that the outer-inner-outer limitation is "literally present" in the U66. In particular, Ametek maintains "the vertical boundary of each ramp [of the U66] starts at the top of the ramp at the outer periphery, goes across the top of the ramp to the inner periphery in alignment with the fan, then follows the inner periphery back to the outer periphery at the bottom of the ramp." As further support, Ametek has provided the deposition testimony and affidavit of James P. Shawcross, the Director of Application Engineering in Ametek's Motor Division, in which he states that the outer-inner-outer structure of the ramp boundaries of claim 1 of the '462 patent is present in the U66.[1]

"Literal infringement is found where the accused device falls within the scope of the asserted claims as properly interpreted." Lantech, Inc. v. Keip Machine Co., 32 F.3d 542, 547 (Fed. Cir. 1994). "For literal infringement, each limitation of the claim must be met by the accused device exactly, any deviation from the claim precluding a finding of infringement."

---

[1] Johnson argues that the conclusory statements in Shawcross' affidavit and deposition testimony should be precluded because Ametek has affirmatively represented to it that Shawcross is not an expert witness but merely a fact witness. Johnson has submitted a copy of a February 13, 2006 email from Ray Weber, counsel for Ametek, to Stephen Weiss, counsel for Johnson, wherein Weber states: "The testimony of Shawcross will . . . be of a nature consistent with his prior deposition, which you took as a fact witness . . . . [H]e will testify as a person skilled in the art, but not as an expert. Accordingly, it is probably not necessary for you to take either of their depositions in the context of expert testimony." In light of this representation, and as Ametek does not appear to assert that Shawcross is an expert witness, the court will take Shawcross to be a fact witness.

6

Id; see also Wright Medical Technology, Inc. v. Osteonics Corp.,
122 F.3d 1440, 1443 ("Literal infringement exists if each of the
limitations of the asserted claim(s) read[s] on, that is, is
found in, the accused device.") (alterations in original).

In the instant action, claim 1 of the '462 patent, as
correctly construed, provides that the "vertical boundary of a
sloping surface which starts from an outer boundary of the
diffuser, and continues to an inner boundary of the diffuser, in
a proper state of adjustment or in a straight line position with
the outer boundary of the working air fan . . . ."

Upon review of the photographs of the U66 and the drawings
of the '462 patent, it is clear that the former does not
literally infringe on the latter as a matter of law.  While the
difference is small, it is nevertheless obvious to the naked eye
that the vertical boundary of the sloping surfaces in the U66
runs from an inner boundary of the diffuser to an outer boundary,
and therefore does not have the "outer-inner-outer" structure of
claim 1 of the '462 patent.  It is not lost on the court that
Shawcross states in his affidavit that the outer-inner-outer
structure is present in the U66.  However, Shawcross begins his
statement by referring back to his earlier deposition testimony.
There, despite being asked directly, Shawcross did not say that
the structure is literally present.  The court therefore
understands his affidavit statement to be directed toward

equivalency rather than literal infringement.

In sum, the court concludes that a reasonable jury could not find that the U66 literally infringes on claim 1 of the '462 patent with respect to the outer-inner-outer structure.

B.    Equivalent Infringement

Johnson next argues that equivalent infringement of claim 1 of the '462 patent is precluded by prosecution history estoppel. Specifically, Johnson points out that during the prosecution history of the '462 patent, Ametek amended certain claims "to underscore the significance of . . . the so-called 'outer-inner-outer' ramp wall configuration" in an effort to distinguish the patent from Japanese Patent 03-018,699 patent ("Japanese '699 patent"). This conduct during prosecution, Johnson argues, "forecloses equivalent infringement of Claim 1 by the Johnson U66 Motor Assembly."

In response, Ametek argues that "the accused U66 [] infringes under the doctrine of equivalents because it combines the first and second ramped surfaces into a single ramped surface bounded by a single wall" but does not dispute Johnson's argument with respect to the outer-inner-outer configuration.

"Prosecution history estoppel normally arises when a change of claim scope is made in order to overcome an examiner's rejection based on prior art." Pall Corp. v. Micron Separations, Inc., 66 F.3d 1211, 1219 (Fed. Cir. 1995). "Estoppel may arise

8

whether the change is made by amendment of the claims during prosecution, or by refiling the patent application with changed claims." Id. "Thus a patentee is estopped from recovering through equivalency that which was deemed unpatentable in view of the prior art." Id; see also Wang Lab. Inc., v. Mitsubishi Elec., 103 F.3d 1571, 1577-78 (Fed. Cir. 1997) ("Prosecution history estoppel acts as one check on application of the doctrine of equivalents by precluding a patentee from regaining, through litigation, coverage of subject matter relinquished during prosecution of the application for the patent.")(internal citations omitted).

As Johnson correctly points out and Ametek does not dispute, Ametek "amended what eventually became claim 1 [of the '462 patent] and highlighted the patentable significance of the 'outer-inner-outer' ramp wall configuration by twice arguing that the [Japanese '699 patent and two additional references] did not disclose that feature." At least twice during its prosecution of the '462 patent, Ametek specifically highlighted the presence of the outer-inner-outer structure in its diffuser to distinguish it from the prior art. For example, in an October 25, 1999 preliminary amendment, Ametek stated that "none of the references cited appreciate the structural feature of a gradually expanding air passage which utilizes a ramp wall that starts from an outer periphery, extends toward an inner periphery and then back toward

an outer periphery and through an aperture." This compels the conclusion that Ametek is "estopped from recovering through equivalency that which was deemed unpatentable in view of the prior art." See Pall Corp. v. Micron Separations, Inc., 66 F.3d 1211, 1219 (Fed. Cir. 1995).

Having concluded that the "outer-inner-outer" ramp wall configuration of the '462 patent is not literally present in the U66 and that Ametek is estopped from arguing equivalency of that limitation, the court must conclude as a matter of law that the U66 does not infringe on the '462 patent. See Dolly, Inc. v. Spalding & Evenflo Co. Inc., 16 F.3d 394, 397 (Fed. Cir. 1994) ("To show infringement, the plaintiff must establish that the accused device includes every limitation of the claim or an equivalent of each limitation.")(emphasis added). The motion for summary judgment is therefore granted with respect to the '462 patent.

2.  The '843 Patent

Johnson asserts that neither the U66 nor the U82 either literally or equivalently infringe claims 1, 10, 11, 12, 14 or 16 of the '843 patent.

    A.  Claim 1: Literal Infringement

Johnson argues that while claim 1 of the patent "requires that numerous blades (a "plurality of vanes") create a cavity (a "fan chamber") that holds or contains (that "receives") the

working air fan, [t]he accused motor assemblies do not have any blades, and do not have any cavity to hold or contain the fan." Furthermore, Johnson points out that the working fan of the U66 and the U82 sits on top of the motor support structure rather than in a cavity.

Ametek responds that claim 1 of the '843 patent sets forth a "by-pass motor assembly, comprising various enumerated elements," where the term "comprising" is an open ended term in claim language, accommodating structure[s] other than that specifically recited." Specifically, Ametek argues that claim 1 of the '843 patent "does not state that a plurality of vanes, alone, form a fan chamber that receives the working air fan, [n]or does the claim state that the vanes receive the fan . . . [rather] [t]he claim simply states that the vanes serve to establish a chamber that receives the fan . . . [which] is exactly the case in the U66 and U82 . . . ."

"Literal infringement is found where the accused device falls within the scope of the asserted claims as properly interpreted." Lantech, Inc. v. Keip Machine Co., 32 F.3d 542, 547 (Fed. Cir. 1994). "For literal infringement, each limitation of the claim must be met by the accused device exactly, any deviation from the claim precluding a finding of infringement." Id; see also Wright Medical Technology, Inc. v. Osteonics Corp., 122 F.3d 1440, 1443 ("Literal infringement exists if each of the

11

limitations of the asserted claim(s) read[s] on, that is, is
found in, the accused device.") (alterations in original).

Ametek relies in large part on Shawcross' affidavit.  He
there states that:

> Claim 1 of the '843 patent does not require that the
> vanes alone form a fan chamber, or that the vanes alone
> receive the fan.  The claim states that the vanes serve
> to establish a chamber that receives the fan.  That is
> the case in the U66 and the U82 Motor Assemblies.  The
> chamber receiving the fan extends beneath the fan and
> is formed by the vanes and ramps of the motor.  That
> chamber defined by that entire region receives the fan.

This statement appears, however, to differ from what Shawcross
explained in his deposition where he stated that "receives said
working fan" means that "the fan is nearby and receives the air
from it."

Regardless of the lack of consistency, Shawcross' statements
fail to engage with the issue at hand.  As mentioned above, all
elements of the claim, as correctly construed, must be present to
establish literal infringement.  Lantech, Inc. v. Keip Machine
Co., 32 F.3d 542, 547 (Fed. Cir. 1994).  In the parties' Joint
Claim Construction Statement, the word "receives" does not occur
in claim 1.  Rather, as Johnson correctly notes, claim 1 provides
that the "support structure at the end of the motor ha[s] more
than one blade that create a cavity that holds or contains the
working air fan."  Thus, a "cavity" is "create[d]" by the support
structure having "more than one blade" and this cavity "holds or

12

contains" the working air fan.  It is evident, therefore, that while claim 1 of the '843 patent specifies that the air fan is located inside the cavity, the air fan in the U66 and the U82 rests above the diffuser.

In sum, all the limitations of claim 1 of the '843 patent are not present in either the U66 nor the U82.  The court therefore concludes that a reasonable jury could not find that the accused devices literally infringe on the '843 patent.

B.  Claim 1: Equivalent Infringement

Johnson next argues that neither the U66 nor the U82 infringes claim 1 of the '843 patent under the doctrine of equivalents.  Specifically, Johnson argues that "[e]quivalent infringement is foreclosed as a matter of law, because allowing motor assemblies [like the U66 and the U82] without blades or a cavity to be the equivalent of the '843 patent's blades that create a cavity to hold the working air fan would completely vitiate all of those claim limitations."  Finally, Johnson argues that the U66 and U82 are "embodiments of the prior art Japanese '699 patent" and that this precludes any finding of equivalent infringement.

In its memorandum in opposition, Ametek does not differentiate between literal and equivalent infringement when responding to Johnson's arguments.  However, even when construing Ametek's response as applying to both types of infringement, the

court agrees with Johnson that there could be no infringement
under the doctrine of equivalents.  Ametek denies, however, that
the U66 and U82 are embodiments of the prior art Japanese patent
'699.

In Sage Products, Inc. v. Devon Industries, Inc., 126 F.3d
1420 (Fed. Cir. 1997), the Federal Circuit affirmed a judgment of
noninfringement under the doctrine of equivalents, concluding
that while the "patent claims a precise arrangement of structural
elements that cooperate in a particular way to achieve a certain
result . . . [the accused device] achieves a similar result . . .
but it does so by a different arrangement of elements."  Id. at
1425; see also Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp,
149 F.3d 1309, 1321 (Fed. Cir. 1998).  To illustrate, the
patentee for a system of safely disposing of sharp medical
instruments brought an infringement action against a competitor,
asserting, inter alia, that "having two constrictions below the
top of the container is the same, for purposes of infringement,
as having one constriction above and one below."  Id. at 1424.
The court disagreed, however, and explained that the doctrine of
equivalents does not grant a patentee "license to remove entirely
. . . [clear structural limitations] from the claim."  Id; see
also Conopco, Inc. v. May Dep't Stores Co., 46 F.3d 1556, 1562
(Fed Cir. 1994) ("The doctrine of equivalents cannot be used to
erase meaningful structural and functional limitations of the

14

claim on which the public is entitled to rely in avoiding infringement.")(internal quotations omitted).

A review of the photographs of the U66 and the U82 contradicts Ametek's assertion that the "claim[s] simply state that the vanes serve to establish a chamber that receives the fan . . . [which] is exactly the case in the U66 and U82 . . . ." The fan on the U66 and the U82 is not received in a "cavity" but clearly rests above the diffuser. Therefore, a finding of infringement would run afoul of the concept that "equivalency cannot embrace a structure that is specifically excluded from the scope of the claims." Dolly, Inc. v. Spalding & Evenflo Companies, Inc., 16 F.3d 394, 400 (Fed. Cir. 1994). Consequently, the court concludes that a finding of equivalent infringement is foreclosed as a matter of law.

In light of the above conclusion, the court need not address the issue of whether the U66 and U82 are embodiments of the prior art Japanese patent '699.

C.    Claims 10, 11, 12 and 14: Literal and Equivalent
        Infringement

With respect to claims 10, 11, 12 and 14, Johnson argues that since they also "require an end bracket having a plurality of vanes that form a fan chamber that receives the working air fan . . . . neither the U66 nor the U82 [] infringes claims 10, 11, 12, and 14, like claim 1 either literally or under the

15

doctrine of equivalents." In response, Ametek makes the same argument it advanced with respect to claim 1, namely that Johnson's arguments fail because the accused motor assemblies clearly have a fan chamber formed by a plurality of vanes and while additional structures may accompany vanes to form the fan chamber, the vanes, nonetheless, serve to form the fan chamber.

For the reasons mentioned above in regard to claim 1 of the '843 patent, the court concludes that a reasonable jury could not find that either the U66 or the U82 infringes claim 10, 11, 12 and 14 of the '843 patent, either literally or under the doctrine of equivalents.

    D.    Claim 16: Literal and Equivalent Infringement

Finally, Johnson argues that neither the U66 nor the U82 literally infringe claim 16 of the '843 patent. Specifically, Johnson contends that unlike claim 16, which requires "a shoulder extending from the edge of the end bracket and . . . a plurality of vanes extending from that shoulder . . . the Johnson motor assemblies have the single element of a plurality of ramps that direct the air from the fan to the motor exhaust."

In response, Ametek argues that it is "simply not the case" that neither the "U66 nor the U82 Motor assembly has a shoulder extending from the edge of the end bracket or vanes extending from the shoulder." Quoting from Shawcross' affidavit, Ametek maintains instead that "the shoulders are the ramps which,

according to the agreed construction, are 'an area around the edge of a higher part connecting it to a lower' and the walls of the ramps are vanes or 'more than one blade' . . . ."

In the court's view, and notwithstanding Shawcross' testimony, it is clear that the U66 and U82 neither literally nor equivalently infringe on claim 16 of the '843 patent. A simple comparison of Figure 4 in the '843 patent to the photographs of the U66 and U82 is sufficient to determine that there is no structure like the "sloping shoulder" described in the '843 patent present in either the U66 or U82. The court therefore concludes that no reasonable jury could find that either the U66 or the U82 literally or equivalently infringe claim 16 of the '843 patent.

As the court has concluded that no reasonable jury could find that either the U66 or U82 infringes on claims 1, 10, 11, 12, 14 or 16 of the '843 patent, Johnson's motion for summary judgment is therefore granted with respect to the '843 patent.

3.   <u>Invalidity of the '580 Patent</u>

Johnson asserts that claims 1 and 2 of the '580 patent are invalid. Specifically, Johnson argues that both claims are invalid due to obviousness-type double patenting and also because they are anticipated by the Japanese '699 patent.

In response, Ametek argues that "the '580 patent is [not] invalid under the doctrine of double patenting in view of . . .

17

the '843 patent."

A. <u>Double Patenting</u>

Johnson argues that "[b]ecause claim 11 of the '843 patent discloses each limitation of . . . claim 1 of the '580 patent, claim 1 of the '580 is not patentably distinct from claim 11 of the '843 patent, and is hence invalid for obviousness-type double patenting."

Ametek replies that the '580 has a patentably distinct feature, namely "the recitation that the channels extend from an inner periphery in circumferential alignment with the outer periphery of the working air fan." In Ametek's view, "[n]o claims of the '843 patent disclose or suggest any relative orientation between the working air fan and the vanes or channels." Ametek further responds that the double patenting argument fails on its face because the '580 and '843 patents expire on the same day. Finally, Ametek argues that "to the extent . . . double patenting is an issue, it may be cured by a terminal disclaimer" and that it is willing to file such disclaimer with the United States Patent Office.

"Obviousness-type double patenting is a judicially created doctrine grounded in public policy, which prevents the extension of the term of the original patent via the patenting of an obvious variation." <u>Georgia-Pacific Corp. v. U.S. Gypsum Co.</u>, 195 F.3d 1322, 1326 (Fed. Cir. 1999). Generally, an obviousness-

18

type double patenting analysis involves two steps.  Eli Lilly &
Co. v. Barr Lab., Inc., 251 F.3d 955, 968 (Fed. Cir. 2001).
"First, as a matter of law, a court construes the claim in the
earlier patent and the claim in the later patent and determines
the differences."  Id.  "Second, the court determines whether the
differences in subject matter between the two claims render the
claims patentably distinct."  Id.  "A later patent claim is not
patentably distinct from an earlier patent claim if the later
claim is obvious over, or anticipated by, the earlier claim."
Id.; see also In re Berg, 140 F.3d 1428, 1431 (Fed. Cir. 1998).

     In Georgia-Pacific Corp. v. U.S. Gypsum Co., 195 F.3d 1322
(Fed. Cir. 1999), the Federal Circuit vacated a judgment for
infringement, concluding that a claim in a later patent "does not
recite an invention that is nonobvious in light of the invention
of [a claim of the earlier patent, and as a result, the later
claim] is invalid for obviousness-type double patenting."  Id. at
1329.  To illustrate, the patentee brought an action alleging
infringement of patents claiming fiberglass mat-reinforced gypsum
boards and the use of the boards in exterior insulation systems.
Id. at 1322.  The defendant argued that "the asserted claims of
the later patent are invalid for obviousness-type double
patenting over the earlier patent, pointing out that claim 1 of
the earlier patent "recites a board . . . with one outer surface
of a glass fiber mat coated by gypsum slurry that seeped through

                              19

the mat while the other outer surface is free of gypsum" and claim 1 of the later patent "recites a board made up of two fiber glass mats, a gypsum slurry sandwiched between them, with at least one outer surface free of set gypsum." Georgia-Pacific Corp. v. U.S. Gypsum Co., 195 F.3d 1322, 1324 (Fed. Cir. 1999). After analyzing the language of the claims, the court noted that "claim 1 of the [later] patent is merely an obvious variation of claim 1 of the [earlier] patent with respect to the outer surfaces of the board, because the failure to claim anything with respect to the characteristics of one outer surface of the board does not distinguish these claims." Id. at 1327. The court further explained that "[t]he language of the claims bears out this obvious variation, as both claim that at least one outer surface of the board is substantially gypsum free." Georgia-Pacific Corp. v. U.S. Gypsum Co., 195 F.3d 1322, 1327 (Fed. Cir. 1999). In sum, claim 1 of the later patent was invalid for obviousness-type double patenting, and as a result, the defendant was not liable for infringement. Id. at 1329.

In the instant action, the preamble and first four paragraphs of claim 1 of the '580 appear identically in claim 11 of the '843 patent. In addition, the drawings attached to the patents are exactly the same, and hence, of no value in shedding light on any purported differences between the '580 and the '843 patent.

20

The fifth paragraph of claim 1 of the '580 patent, as properly construed, reads as follows:

> said end bracket having a plurality of passageways that slope downward and outward away from said working air fan toward said at least one exhaust aperture, wherein said passageways extend from an inner periphery <u>in a proper state of adjustment or in a straight line position</u> with the outer periphery of said working air fan toward an outer periphery of said end bracket. (emphasis added).

The fifth and sixth paragraphs of claim 11 of the '843 patent, as properly construed, read as follows:

> said end bracket having a plurality of vanes that form a fan chamber that receives said working air fan such that air expelled by said working air fan is re-directed by said vanes toward said at least one exhaust aperture;

> and wherein said end bracket has a downwardly slanted or angled area around the edge of a higher part connecting it to a lower part and each said vane has a[n] ending point nearest the shroud extending radially along the sloping shoulder, said ending points, nearest the shroud and said shroud forming a gathering chamber therebetween where the working air accumulated prior to exiting from said at least one exhaust aperture.

In the court's view, the recitation in claim 1 of the '580 patent that the passageways extend from an inner periphery in circumferential alignment with the outer periphery of the working air fan is not a patentably distinct feature but merely an "obvious variation" of claim 11 of the '843 patent. <u>See Georgia-Pacific Corp. v. U.S. Gypsum Co.</u>, 195 F.3d 1322, 1327 (Fed. Cir. 1999). Claim 11 of the '843 patent provides, in relevant part, that "said end bracket having a plurality of vanes that form a

fan chamber that receives said working air fan such that air expelled by said working air fan is re-directed by said vanes toward said at least one exhaust aperture." In essence, the adjacent vanes form channels that start at the outer edge of the fan and gradually expand to direct the air flow from the inner rim toward the outer rim. Therefore, the vanes in the '843 patent must, exactly as set out in the '580 patent, "extend from the inner periphery in a proper state of adjustment . . . with the outer periphery of the working air fan" in order to ensure that those channels capture the exhausted air. Consequently, this limitation in claim 1 of the '580 patent is necessarily disclosed in claim 11 of the '843 patent.

Johnson next argues that "claim 2 of the '580 patent is invalid due to obviousness-type double patenting." Specifically, Johnson maintains that "claim 2 incorporates all of the limitations of claim 1 and further adds that the 'passageways gradually get larger as they approach at least one exhaust opening' and that "claim 20 of the '843 patent . . . explicitly discloses this additional feature, as it provides that the 'adjacent vanes form gradually expanding channels therebetween."

In response, Ametek makes the same argument that it did with respect to claim 1, to wit, whereas the claims of the '580 patent recite that "the channels extend from an inner periphery in circumferential alignment with the outer periphery of the working

22

air fan . . . [n]o claims of the '843 patent disclose or suggest
any relative orientation between the working air fan and the
vanes or channels."  Since claim 2 of the '580 patent depends on
claim 1, Ametek argues, claim 2 "cannot be an obvious variation
of [claim 20] of the '843 patent."

The strikingly similar language between the two claims
suggests that claim 2 of the '580 patent is obvious over claim 20
of the '843 patent.  Claim 20 of the '843 patent provides that
"vanes next to each other create gradually expanding passageways
therebetween."  Claim 2 of the '580 patent provides that "said
passageways gradually get larger as they approach at least one
exhaust opening."  Both claims, therefore, serve the same
purpose; adjacent vanes form channels which gradually expand the
working air flow from the inner rim toward the outer rim.  The
court therefore concludes that claim 2 of the '580 patent is an
obvious variation of the '843 patent.

As the court has found that claims 1 and 2 of the '580
patent are obvious variations of claims 11 and 20 of the '843
patent, the '580 patent is invalid for obviousness-type double
patenting.

Ametek argues that any double patenting issue is moot as the
'580 and '843 patents expire on the same day.  The court
disagrees.  While it is true that the fact of identical
expiration dates addresses the concern that a patentee may

23

receive a patent term extension through claims in a second patent
that are not patentably distinct from those in the first patent,
see Eli Lilly & Co. v. Barr Labs., 251 F.3d 955, 967 (Fed. Cir.
2001), it does not eliminate the possibility of multiple suits
against an infringer by assignees of related patents.

Finally, Ametek argues that invalidity due to double
patenting may be cured by the filing of a terminal disclaimer and
that Ametek will file such disclaimer should the court find
double patenting.

The United States Court of Appeals for the Federal Circuit
has recently confirmed that a terminal disclaimer may be filed
after a patent is issued.  Perricone v. Medicis Pharm. Corp., 432
F.3d 1368, 1375 (Fed. Cir. 2005).  Furthermore, "[a] terminal
disclaimer can indeed supplant a finding of invalidity for double
patenting."  Id.  While the opinion explicitly made no
determination about the retrospective effect of a terminal
disclaimer, a district court has interpreted it as "strongly
infer[ring] that a terminal disclaimer filed years after a
judicial finding of invalidity can reinstate the validity of the
patent."  In re Metoprolol Succinate Patent Litig., 2006 U.S.
Dist. LEXIS 1328 (D. Mo. 2006).

While there may be merit to Ametek's position, the issue is
at this point hypothetical as Ametek has not filed a terminal
disclaimer.  The court declines to consider the effect a filing

24

of a terminal disclaimer will have on the validity of the '580 patent.

As the court has concluded that claims 1 and 2 of the '580 patent are invalid due to obviousness-type double patenting, Johnson's motion for summary judgment with respect to the '580 patent is granted.

### CONCLUSION

For the foregoing reasons, Johnson's motion for summary judgment (document no. 63) is GRANTED.

It is so ordered this 23rd day of August, 2006, at Hartford, Connecticut.

```
_____/s/_____
Alfred V. Covello
United States District Judge
```